**Thomas H. CREWS, Appellant**

v.

**SEVEN SPRINGS MOUNTAIN RESORT t/d/b/a Seven Springs Farm, Incorporated and John Doe I, John Doe II, John Doe III and John Doe IV Appellee**

Superior Court of Pennsylvania.

Argued Sept. 29, 2004.

Filed April 18, 2005.

Reargument Denied June 9, 2005.

Dominic D. Salvatori, Pittsburgh, for appellant.

Julia E. Snow, Pittsburgh, for appellee.

Before: MUSMANNO, LALLY GREEN, and McCAFFERY, JJ.

McCAFFERY, J.:

¶ 1 Appellant, Thomas H. Crews, asks us to determine whether the trial court properly granted judgment on the pleadings to Appellee, Seven Springs Mountain Resort, in this negligence action. Specifically, we must decide whether the Skier's Responsibility Act and the exculpatory language on Appellant's lift ticket bar a claim for injuries sustained when Appellant was struck from behind by a high school student allegedly snowboarding while under

the influence of alcohol. After a thorough review, we conclude that the risk as pleaded in Appellant's complaint is not a risk inherent to the sport of skiing. As a result, the trial court improperly decided that Appellee was entitled to judgment on the pleadings, and we are constrained to reverse and remand for further proceedings.

¶ 2 The salient facts and procedural history as set forth by the trial court are as follows:

On January 10, 2002 [Appellant] was on the premises owned, operated, controlled and maintained by [Appellee] as a business invitee. ... [Appellant] admitted [he] was an experienced skier and knew that collisions are a part of the sport of downhill skiing. At approximately 6:30 p.m. and 7:30 p.m. on January 10, 2002 [Appellant] was skiing down "Tyrol Slope", a trail marked for skiers, when he was "violently, abruptly and *without warning* struck from behind and the side by John Doe I,[1] who was using a snowboard." At the time of the collision [Appellant] and unidentified other nearby witnesses smelled alcohol on the breath of Defendant John Doe I. As a result of the collision ..., [Appellant] suffered various injuries[,] which are or may be permanent[,] and various financial losses and damages.

[Appellant] filed suit against [Appellee] and Defendants John Doe I, John Doe II, John Doe III and John Doe IV. In his Complaint against [Appellee,] [Appellant] *inter alia* alleged:

"13. At the time of the collision between [Appellant] and Defendant, John Doe I, [Appellant] and other wit-

nesses nearby smelled alcohol on the breath of Defendant, John Do[e] I. In addition, there were beer bottles and other liquor bottles strewn on the slope as well as in the parking lot area where the high school students participating in the outing were congregated.

...16. [Appellee] was negligent in failing to properly supervise the high school students who were present at the resort on the evening of the accident. In particular, [Appellee] was negligent in failing to prevent alcohol consumption on the part of the high school students in general and Defendant, John Doe I, in particular. It is believed, and therefore averred, that said conduct had gone on not only earlier in the evening, but also on prior occasions, such that [Appellee] knew or should have known of such conduct and the dangers posed thereby.

17. [Appellee] was further negligent in failing to have adequate ski patrols to monitor and control the conduct of the high school students present at the time of the aforesaid collision.

(Trial Court Opinion, filed November 21, 2003, at 2–3) (emphasis supplied).

¶ 3 Appellee answered the complaint, denying all averments therein. Appellee also filed new matter, asserting as affirmative defenses that Appellant both assumed the risk of collision and also released Appellee from any liability "whatsoever" for injuries that occurred while skiing through his purchase of a lift ticket. (*See* Answer and New Matter, ¶ 43; R.R. at 18). Several months later, Appellee moved for judg-

---

1. According to paragraph 5 of Appellant's complaint, "Defendant, John Doe I, is a presently unidentified individual who it is believed, and therefore averred, was a high school student who was part of a school-sponsored group, and was snowboarding or otherwise present at [Appellee's] ski resort on January 10, 2002." (*See* Reproduced Record ("R.R.") at 4.)

ment on the pleadings on the basis of the exculpatory release on the lift ticket. Appellee also asserted that it had no duty to protect Appellant from the inherent risks of skiing, relying on our Supreme Court's holding in *Hughes v. Seven Springs Farm*.[2] Appellant replied to the motion, and the trial court granted it following oral argument. This appeal ensued, in which Appellant asserts a sole issue for our review:

> DID [APPELLANT] ASSUME THE RISK OF BEING STRUCK BY A SNOWBOARDER WHO WAS A HIGH SCHOOL STUDENT, AND WHO WAS UNDER THE INFLUENCE OF ALCOHOL AT THE TIME?

(Appellant's Brief at 3).

¶ 4 We begin by noting our standard and scope of review in matters involving the grant or denial of judgment on the pleadings:

> Appellate review of an order granting a motion for judgment on the pleadings is plenary. The appellate court will apply the same standard employed by the trial court. A trial court must confine its consideration to the pleadings and relevant documents. The court must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted.

*Lewis v. Erie Ins. Exchange*, 753 A.2d 839, 842 (Pa.Super.2000) (quotation omitted).

"We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise." *Holt v. Lenko*, 791 A.2d 1212, 1214 (Pa.Super.2002) (quotation omitted).

¶ 5 Instantly, Appellant pleaded in his complaint that John Doe I, a high school student, had been drinking alcohol while snowboarding at Appellee's resort. Appellant pleaded not only that the underage drinking had started earlier in the evening, but that it had also occurred on prior occasions at the resort, such that Appellee was on notice of same. Appellant also pleaded that Appellee had an inadequate number of ski patrols to monitor the conduct on its premises. (Trial Court Opinion at 3). On the other hand, Appellant admitted that he was an experienced skier, that he knew collisions were a risk of downhill skiing, and that he agreed to the exculpatory terms set forth on the lift ticket.[3] (Reply to New Matter, ¶¶ 6 and 11, R.R. at 26–27) Thus, if Appellant had pleaded merely that he was injured in a collision with another, our inquiry would be ended. The crux of Appellant's argument, however, is that he did *not* agree to accept the risk of being hit by a fellow sportsman who was using the resort's facilities while under the influence of alcohol. He maintains such a risk is not one "inherent" to the sport of skiing. (Appellant's Brief at 7–8). We agree.

¶ 6 In *Jones v. Three Rivers Manage-*

---

**2.** 563 Pa. 501, 762 A.2d, 339 (2000), discussed more fully *infra*.

**3.** The lift ticket states, in part:
There are inherent and other risks in the sport of skiing. These risks include, but are not limited to ... collisions with ... other skiers.... If you do not agree that the injuries, sometimes serious, resulting from

these risks are not the responsibility of Seven Springs Farm, Inc. and do not agree that you voluntarily assume the risk of these injuries while participating in this sport, do not purchase a ticket....
(Trial Court Opinion at 5) (emphasis supplied).

*ment Corp.,*[4] the plaintiff brought an action for injuries sustained when she was struck by a foul ball while she was walking in an interior concourse of the baseball stadium. Although a jury found in her favor, this Court reversed and remanded for entry of judgment *n.o.v.* Our Supreme Court, in *reinstating* the verdict, discussed the doctrine of assumption of the risk in conjunction with the "no duty" rule which applies to amusement facilities which have not deviated in some relevant respect from established custom. *Id.* at 82–84, 394 A.2d at 549–550. The Court noted that "even in a 'place of amusement' not every risk is reasonably expected." *Id.* at 84, 394 A.2d at 551. Moreover, the Court observed, "[t]he rationale behind the rule that the standard of reasonable care does not impose a duty to protect from risks associated with [a sport], naturally limits its application to those injuries incurred as a result of risks any … spectator must and will be held to anticipate." *Id.* Importantly, however, the Court stated that the "no duty" rule does not abrogate the duty of "sports facilities to protect patrons from foreseeably dangerous conditions *not inherent* in the amusement activity." *Id.* at 85, 394 A.2d at 551 (emphasis supplied). Thus, the Court observed:

> We have therefore regularly granted or affirmed judgments n.o.v. in cases involving places of amusement where the plaintiff alleges no more than injury caused by a risk inherent in the activity in question. Only when the plaintiff introduces adequate evidence that the amusement facility in which he was injured deviated in some relevant respect from established custom will it be proper for an "inherent-risk" case to go to the jury.

*Id.* at 83–84, 394 A.2d at 550.

¶ 7 In *Hughes, supra,* the plaintiff was struck from behind at the bottom of a hill while skiing towards the lift. A split panel of this court reversed the grant of summary judgment in favor of the defendant, holding, *inter alia,* that it could not determine as a matter of law that the plaintiff's injury was caused by an occurrence *inherent* in the sport of skiing. *Id.* at 503, 762 A.2d at 340. In reversing the panel, our Supreme Court examined the Skier's Responsibility Act amendment to the Comparative Negligence Statute. The Act states:

(c) Downhill skiing.—

(1) The General Assembly finds that the sport of downhill skiing is practiced by a large number of citizens of this Commonwealth and also attracts to this Commonwealth large numbers of nonresidents significantly contributing to the economy of this Commonwealth. It is recognized that as in some other sports, there are inherent risks in the sport of downhill skiing.

(2) The doctrine of voluntary assumption of risk as it applies to downhill skiing injuries and damages is not modified by subsections (a) and (b.1).

42 Pa.C.S.A. § 7102(c). The Court noted that the doctrine of assumption of the risk has been problematic in other areas, but that in occurrences involving injuries to plaintiffs who were participating in sporting events, the cases "have tended to speak in terms of whether the injury suffered resulted from a risk 'inherent' in the activity in question; if it did, then the defendant was under no duty to the plaintiff, and the suit could not go forward." *Hughes* at 508, 762 A.2d at 344.

¶ 8 In reversing the panel's decision, the high court established a two-part inquiry for this type of case:

4.   483 Pa. 75, 84, 394 A.2d 546, 550 (Pa.1978).

First, this Court must determine whether appellee was engaged in the sport of downhill skiing at the time of her injury. If that answer is affirmative, we must then determine whether the risk of being hit from behind by another skier while skiing towards the ski lift at the base of the slope is one of the " inherent risks" of downhill skiing, which appellee must be deemed to have assumed under the Act. If so, then summary judgment was appropriate because, as a matter of law, appellee cannot recover for her injuries.

*Id.* at 510, 762 A.2d at 344. The *Hughes* Court reiterated its opinion that the "no-duty" rule "in no way affect[s] the duty of ... sports facilities to protect patrons from foreseeably dangerous conditions not inherent in the amusement activity." *Id.* at 509, 762 A.2d at 343–344 (quoting *Jones, supra*). Acknowledging that the possibility that one skier may collide with another at the base of a ski slope is a common risk of downhill skiing, the Court held that the defendant had no duty to protect the plaintiff from that inherent risk. *Id.*

¶ 9 In the case *sub judice*, however, the collision was not merely with another skier, which would have thus made the collision a "common risk of downhill skiing"; the collision was with an underage drinker on a snowboard.[5] Although a matter of first impression for this Court, we believe that a collision with an underage drinker on a snowboard cannot be considered an inherent risk of downhill skiing. In addition to the reasoning set forth above, we are guided in our decision-making by the decisions of two appellate courts of other jurisdictions.

¶ 10 In *Freeman v. Hale*,[6] an injured skier brought an action against another skier for personal injuries she sustained when the defendant skier, who had been drinking, fell on her. The trial court granted summary judgment on the basis of assumption of the risk. The Court of Appeal determined that summary judgment would be appropriate "only if the consumption of alcohol is an activity which is within the range of activity ordinarily involved in skiing." *Id.* at 423. The *Freeman* Court decided it was not within the range, reasoning that prohibiting drinking during skiing would not fundamentally alter the nature of the sport. *Id.* The Court based its reasoning on the California Supreme Court's declaration that an "inherent" risk is one that cannot be removed "without altering the nature of the sport." *Id.* at 421 (quoting *Knight v. Jewett,* 3 Cal.4th 296, 11 Cal.Rptr.2d 2, 834 P.2d 696, 709 (Ca.1992)).

¶ 11 Similarly, in *Reisman v. Great American Recreation, Inc.*,[7] Ms. Reisman brought a personal injury action on behalf of her son, a novice skier, against a resort after a drunken skier collided with him. The resort argued that the "assumption of the risk" doctrine entitled it to judgment *n.o.v.* In affirming the jury verdict for the plaintiffs, the Superior Court, Appellate Division, noted,

> the risk which was involved, a drunken and dangerous skier, is clearly not an "inherent" risk of the sport of skiing which plaintiff should be charged with having assumed by virtue of setting foot on defendant's slopes. Moreover, it cannot be categorized as the sort of risk which is "impractical or impossible" to eliminate, especially in light of the fact

---

**5.** We perceive no significant difference between skiing and snowboarding for purposes of our analysis.

**6.** 30 Cal.App.4th 1388, 36 Cal.Rptr.2d 418 (1994).

**7.** 266 N.J.Super. 87, 628 A.2d 801 (1993).

that defendant was fully aware of it. Clearly, with due care on defendant's part, this risk could have been eliminated.

*Id.* at 805. Although the language regarding risks "impractical or impossible to eliminate" is provided by statute in New Jersey, it is essentially the same as the California common law test.

■ ¶ 12 We are persuaded, for purposes of both the Pennsylvania's Skier's Responsibility Act and the exculpatory language of Appellee's lift ticket, that an "inherent risk" is one that cannot be removed without altering the fundamental nature of skiing. The risk allegedly encountered instantly by Appellant is not one inherent to skiing.[8] Moreover, at the stage of judgment on the pleadings, we must accept as true Appellant's pleading that he was injured by an underage drinker on a snowboard and that Appellee knew or should have known that this conduct was occurring but failed to prevent or eliminate such conduct.[9] *See Lewis, supra.* Because we have determined that such conduct is not an inherent risk of the sport of skiing, we can *not* conclude that Appellee's "right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.[10]" *See Holt,* 791 A.2d at 1214. Thus, the trial court improperly concluded that Appellee was entitled to judgment on the pleadings, and we are constrained to reverse.

¶ 13 Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

---

**8.** For the same reasons, an underage drinker on a snowboard does not qualify as an "other risk in the sport of skiing." (*See* lift ticket language, *supra,* at note 3).

**9.** We agree with the dissent's proposition that "in most cases, mere consumption of alcohol is inadmissible unless it reasonably establishes intoxication." Dissenting Statement at 7, n. 2. We note, however that in each of the

¶ 14 Judge Lally–Green files a Dissenting Statement.

LALLY–GREEN, J., Dissenting.:

¶ 1 Appellant, Thomas H. Crews, appeals from an order of the trial court that granted the Motion for Judgment on the Pleadings of Appellee, Seven Springs Mountain Resort. The majority would reverse the order of the trial court and I would affirm. Hence, I respectfully dissent.

¶ 2 I start with the appropriate standard and scope of review. The standard of review of an order granting judgment on the pleadings is as follows:

We must accept as true all well pleaded statements of fact of the party against whom the motion is granted and consider against him only those facts that he specifically admits. We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

*Weik v. Estate of Brown,* 794 A.2d 907, 908 (Pa.Super.2002), *appeal denied,* 572 Pa. 709, 813 A.2d 844 (Pa.2002). In conducting this inquiry, our scope of review confines our consideration to the pleadings and documents attached thereto. *Jones v. Travelers Insurance Company,* 356 Pa.Super. 213, 514 A.2d 576, 578 (1986).

¶ 3 I note that judgment on the pleadings is proper when there are no disputed issues of material fact. *Vetter v. Fun*

cases the dissent relies upon for that proposition, the parties therein were at the *trial* stage. At that point, of course, the parties had been afforded ample opportunity to develop their cases.

**10.** We do not imply that Appellant is categorically entitled to a trial. Discovery may disclose facts, or a lack thereof, which may form a basis for summary judgment.

*Footwear,* 447 Pa.Super. 84, 668 A.2d 529 (1995). When deciding a motion for judgment on the pleadings, a court must examine the legal sufficiency of the pleadings. *Bensalem Township School District v. Commonwealth,* 518 Pa. 581, 544 A.2d 1318 (1988).

¶ 4 In my opinion, Appellant's case is governed by *Hughes v. Seven Springs Farm, Inc.,* 563 Pa. 501, 762 A.2d 339 (2000), where our Supreme Court addressed the Pennsylvania Skiers Responsibility Act, 42 Pa.C.S.A. § 7102(c). The majority correctly describes *Hughes* as follows:

> In *Hughes,*[5] the plaintiff was struck from behind at the bottom of a hill while skiing towards the lift.
>
> 5   563 Pa. at 502, 762 A.2d at 340.

A split panel of this court reversed the grant of summary judgment in favor of the defendant, holding, *inter alia,* that it could not determine as a matter of law that the plaintiff's injury was caused by an occurrence *inherent* in the sport of skiing. *Id.* at 503, 762 A.2d at 340. In reversing the panel, our Supreme Court examined the Skier's Responsibility Act amendment to the Comparative Negligence Statute. The Act states:

> (c)  Downhill skiing.—
>
> (1) The General Assembly finds that the sport of downhill skiing is practiced by a large number of citizens of this Commonwealth and also attracts to this Commonwealth large numbers of nonresidents significantly contributing to the economy of this Commonwealth. It is recognized that as in some other sports, there are inherent risks in the sport of downhill skiing.
> (2) The doctrine of voluntary assumption of risk as it applies to downhill skiing injuries and damages is not modified by subsections (a) and (b.1).

42 Pa.C.S.A. § 7102(c). The Court noted that the doctrine of assumption of

the risk has been problematic in other areas, but that in occurrences involving injuries to plaintiffs who were participating in sporting events, the cases "have tended to speak in terms of whether the injury suffered resulted from a risk 'inherent' in the activity in question; if it did, then the defendant was under no duty to the plaintiff, and the suit could not go forward." *Hughes* at 508, 762 A.2d at 344.

In reversing the panel's decision, the high court established a two-part inquiry for this type of case:

> First, this Court must determine whether appellee was engaged in the sport of downhill skiing at the time of her injury. If that answer is affirmative, we must then determine whether the risk of being hit from behind by another skier while skiing towards the ski lift at the base of the slope is one of the " inherent risks" of downhill skiing, which appellee must be deemed to have assumed under the Act. If so, then summary judgment was appropriate because, as a matter of law, appellee cannot recover for her injuries.

*Id.* at 510, 762 A.2d at 344.

The *Hughes* Court reiterated its opinion that the "no-duty" rule "in no way affect[s] the duty of ... sports facilities to protect patrons from foreseeably dangerous conditions not inherent in the amusement activity." *Id.* at 509, 762 A.2d at 343–344 (quoting *Jones, supra* ). Acknowledging that the possibility that one skier may collide with another at the base of a ski slope is a common risk of downhill skiing, the Court held that the defendant had no duty to protect the plaintiff from that inherent risk. *Id.* Majority Opinion, at 6–8.

¶ 5 I also note that the *Hughes* Court observed that plaintiff "collided not with

some alien or unexpected object in the sport, but with another downhill skier coming down the very same hill after her." *Id.* at 344. The Court further equated such a risk as being "as much a part of the risk in downhill skiing, if not more so, than the snow and ice, elevation, contour, speed and weather conditions." *Id.* In addition, I observe that, by voluntarily proceeding to encounter a known or obvious danger of collision with another skier, a person is deemed to have agreed to accept the risk and to undertake to look out for himself. *Romeo v. Pittsburgh Assocs.*, 787 A.2d 1027 (Pa.Super.2001).

¶ 6 In Appellant's case, the trial court stated the relevant procedural and factual history in its opinion as follows:

On January 10, 2002 Thomas H. Crews, the Plaintiff, was on the premises owned, operated, controlled and maintained by Defendant Seven Springs as a business invitee. Counsel for the Plaintiff admitted Mr. Crews was an experienced skier and knew that collisions are a part of the sport of downhill skiing. At approximately 6:30 p.m. and 7:30 p.m. on January 10, 2002 the Plaintiff was skiing down "Tyrol Slope", a trail marked for skiers, when he was "violently, abruptly and without warning struck from behind and the side by John Doe I, who was using a snowboard." At the time of the collision Plaintiff and unidentified other nearby witnesses smelled alcohol on the breath of Defendant John Doe I. As a result of the collision between John Doe I and Mr. Crews, the Plaintiff suffered various injuries which are or may be permanent and various financial losses and damages.

Trial Court Opinion, 11/21/03, at 2–3. The trial court granted Seven Springs' motion for judgment on the pleadings as follows:

We do not find there are any disputed issues of material facts. We have examined with care the legal sufficiency of the pleadings. We find the Plaintiff Thomas H. Crews entered into an exculpatory agreement with the Defendant Seven Springs that the risks of injuries are not the responsibility of Seven Springs Farm, Inc. and he voluntarily assumed the risk of those injuries. Therefore, we will grant the Motion of Seven Springs for Judgment on the Pleadings.

Trial Court Opinion, 11/21/03, at 11.

¶ 7 Upon my review of the record, I would conclude that the trial court did not err in so ruling. In his complaint, Appellant alleges that on January 10, 2002, "Plaintiff and unidentified other nearby witnesses smelled alcohol on the breath of Defendant John Doe I." Appellant's Complaint at Paragraph 13. Appellant also alleges that there were beer bottles and other liquor bottles strewn on the slope and parking lot where the high school students congregated. *Id.* On the basis of these allegations, Appellant concludes that the snowboarder was under the influence of alcohol at the time of the collision.

¶ 8 My review of the record reflects that Appellant does not establish in the pleadings the identity of the snowboarder (*i.e.*, John Doe I). Thus, even assuming the truth of the allegations that underage high school students were drinking at the ski resort, Appellant failed to plead sufficient factual allegations to identify the snowboarder he collided with as being an underage high school consumer of alcoholic beverages. Thus, we are left with the fact that a collision occurred between two skiers (or a skier with a snowboarder[11]) on a

11. The majority perceives no significant difference between skiing and snowboarding for purposes of this analysis. *Id.* at n. 6. I agree.

ski slope. By voluntarily proceeding to encounter a known or obvious danger of collision with a snowboarder, Appellant is deemed to have agreed to accept the risk and to undertake to look out for himself. *Romeo; Hughes.* I would conclude, therefore, that the risk of a collision between a skier and a snowboarder is subsumed within the Skier's Responsibility Act and affords no relief to Appellant. *Hughes, supra.*

¶ 9 Even assuming the pleadings and inferences to mean that John Doe I was underage and had been seen drinking, I would still conclude that Appellant assumed the risk. The risk at issue here is the risk of a collision with another person on the slopes. This is an inherent risk of skiing. Thus, I would conclude that *Hughes* controls.

¶ 10 Given our limited scope of review, I would conclude that the trial court properly determined that Seven Springs is entitled to judgment on the pleadings and would affirm the order of the trial court.[12] *Bensalem.* For these reasons, I, thus, dissent.

---

12. I also note that Appellant's allegations concerning the consumption of beer would not be admissible in evidence and do not undermine his assumption of the risk because, in most cases, mere consumption of alcohol is inadmissible unless it reasonably establishes intoxication. To be admissible, courts first must address whether evidence of intoxication is sufficient enough to be considered in determining whether plaintiff's cause of action is barred by the defense of assumption of the risk. This Court has stated, "when recklessness or carelessness is at issue, proof of intoxication is relevant, but the mere fact of consuming alcohol is not admissible, being unfairly prejudicial, unless it reasonably establishes intoxication." *Cusatis v. Reichert,* 267 Pa.Super. 247, 406 A.2d 787 (1979). In *Billow v. Farmers Trust Co.,* 438 Pa. 514, 266 A.2d 92 (1970), the Supreme Court affirmed the exclusion of proffered testimony of a doctor "who apparently would have stated that, in his opinion, a man with a blood alcohol content of .14 would be affected in his driving" because such testimony, by itself, "falls short of the requirement that the evidence show 'a degree of intoxication which proves unfitness to drive.'" *Id.* at 93.

· Pennsylvania courts have indicated that something more than a "suggestion of intoxication" is necessary in order for evidence to be admissible. In *Ackerman v. Delcomico,* 336 Pa.Super. 569, 486 A.2d 410 (1984), there was corroborated testimony that a party had been drinking heavily in the late afternoon and evening before an accident. *Id.* at 413. Furthermore, there was corroborated testimony that the party had a "strong odor of alcohol and slurred speech" after the accident. *Id.* The court stated that the evidence established "much more than a suggestion of intoxication." *Id.* The court, therefore, concluded that the evidence of the party's intoxication was properly admitted, and was not prejudicial. *Id. See also, Burke v. Buck Hotel Inc.,* 742 A.2d 239 (Pa.Cmwlth.1999). Here, the legal sufficiency of the pleadings is inadequate to support the cause of action. Whether this precedent is equally applicable when underage drinking is at issue need not be addressed herein.