**Nissley v. Candytown Motorcycle Club Inc.**

*Jaime D. Jackson,* for plaintiff.
*Steven J. Payne,* for defendants.

GEORGELIS, *J.,* October 6, 2005—Before me is the motion for summary judgment of the defendants, Candytown Motorcycle Club Inc. and Richard Bellaman. The plaintiff, Edward E. Nissley, has brought this negligence action for injuries suffered while riding his motorcycle on the dirt track at Candytown. The motion will be granted.

The relevant facts are as follows. Nissley became a member of Candytown in 1998 or 1999. On January 16, 2002, he renewed his membership by signing and dating the application for membership, which contained a release and indemnity agreement. He renewed his mem-

bership again on January 19, 2003, when, during a meeting at the Candytown Motorcycle Club, he crossed out the old date on his application and filled in the new date.

On April 6, 2003, Nissley was riding his motorcycle on the track at Candytown. At the same time, Bellaman, Candytown's vice president, and another individual were conducting maintenance on the track with a tractor. At approximately 4 p.m., Nissley rode his motorcycle onto one of the track's jumps. Without being able to see the tractor on the other side of the jump, Nissley collided with the tractor and was injured.

In their motion, the defendants contend that the release was a valid and enforceable exculpatory agreement and that, when Nissley signed it, he gave up all his rights to sue or make a claim against Candytown and all other persons connected with the club for any injury he may suffer. They contend that Nissley is barred from bringing suit and that they are entitled to summary judgment as a matter of law.

In response to the motion, Nissley challenges the enforceability of the release and contends that: the release signed in January 2002 does not preclude him from recovering for his injuries suffered on April 6, 2003; it covered only his negligence and not that of the defendants; and it only included risks inherent to motorcycle riding and not risks that he could not reasonably have known or anticipated.

"Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

*Kuney v. Benjamin Franklin Clinic,* 751 A.2d 662, 664 (Pa. Super. 2000). "The moving party has the burden of proving that no genuine issue of material fact exists." *Accu-Weather Inc. v. Prospect Communications Inc.,* 435 Pa. Super. 93, 99, 644 A.2d 1251, 1254 (1994). "In summary judgment cases, review of the record must be conducted in the light most favorable to the non-moving party, and all doubts regarding the existence of a genuine issue of material fact must be resolved against the moving party." *Young v. PennDOT,* 560 Pa. 373, 376, 744 A.2d 1276, 1277 (2000).

In addressing the validity of a release, in *Employers Liability Assurance Corporation Ltd. v. Greenville Business Men's Association,* 423 Pa. 288, 224 A.2d 620 (1966), our Supreme Court stated:

"Generally speaking, an exculpatory clause is valid if: (a) it does not contravene any policy of the law, that is, if it is not a matter of interest to the public or the state . . . ; (b) the contract is between persons relating entirely to their own private affairs . . . ; and (c) each party is a free bargaining agent and the clause is not in effect a mere contract of adhesion, whereby [one party] simply adheres to a document which he is powerless to alter, having no alternative other than to reject the transaction entirely." *Id.* at 291-92, 224 A.2d at 622-23. (citation omitted)

The parties have agreed that the release meets all of these requirements and is therefore valid. They disagree as to its enforceability.

Nissley first contends that the release was limited to 2002, the year in which it was signed. He asserts that the release was effective for a one-year term and that it was,

therefore, ineffective against him in 2003. He contends that, if Candytown intended the release to apply after expiration of the 2002 membership, a separate release should have been required.

The defendants contend that the process by which Nissley renewed his membership also meant that he re-adopted the release. In order to renew a membership, a Candytown member must attend a meeting where he reviews the application, including the release, which he signed the previous year, update any changed information and re-date the application. They assert that, when Nissley completed this process, he intended to extend his membership and to re-adopt the release, making it effective the date he suffered his injuries.

Nissley's argument that his membership renewal in 2003 did not include re-adopting the release is unpersuasive. Candytown's application for membership is a one-page form, and the release is directly below the applicant's personal information. Nissley completed, dated and signed the application and the release on January 16, 2002. Only one signature is required on the application, and providing the personal information and signing the application gave Nissley the right to ride his motorcycle on Candytown's track.

The defendants' process for membership renewals is specific. Members are to attend the annual meeting, review the application and the release, update any new information and re-date the top of the application. It is unreasonable to think that, when it comes time for members to renew their memberships, an effective release would no longer be required. By reviewing the document and re-dating the top of the application on January

19, 2003, Nissley affirmatively renewed his membership and accepted the terms of the release. Accepting Nissley's position that his changing of the date renewed his membership but did not renew the release would allow him to enjoy the benefits of membership without assuming the clearly intended, coincidental consequences of the release. I conclude that the release was in effect at the time he suffered his injuries on April 6, 2003.

Nissley next contends that the language of the release is ambiguous because it does not specifically release the defendants from claims when they are at fault and because it does not use the words negligence, liability, fault or responsibility. He also contends that, at the time he signed the application containing the release, no one from Candytown explained the release to him and that he believed he was only waiving his right to make a claim against the defendants due to his own negligence.

The defendants contend that the exculpatory language was sufficiently clear to release them from any liability. They contend that exculpatory language need not reference the negligence of any party to be enforceable and that Nissley was giving up all his rights to make any claim for any injury. They also point out that Nissley testified during his deposition that he read the release before he signed it and that he understood the plain meaning of the release at the time of the deposition.

The defendants rely on *Zimmer v. Mitchell and Ness,* 253 Pa. Super. 474, 385 A.2d 437 (1978), and I believe that case is dispositive of this issue. The exculpatory clause in *Zimmer* also did not specifically mention negligence but instead used the phrase "I furthermore release Mitchell and Ness from any [and all] liability for

damage and injury . . . ." *Id.* at 478, 385 A.2d at 438. Our Superior Court found this language to be sufficient. "To say that negligent conduct is not included in '*any* liability' is patently incorrect." *Id.* at 480, 385 A.2d at 440.

The release in this case states: "I hereby give up all my rights to sue or make claim against the Candytown Motorcycle Club Inc. . . . for any injury to property or person I may suffer . . . ." I believe that this exculpatory language is all encompassing and that causes of action for negligence are included within the rights given up by Nissley in the release.

Even if the defendant had not explained the release to Nissley, this does not relieve him from being bound by the contract he signed. The language of the release is unambiguous, and, if he believed the release relieved the defendants from liability only for his own negligence, he should have included this specifically in the release.

Nissley's final argument against the enforceability of the release is that the language may reasonably be read to include only risks that he had anticipated or expected. The parties agree that the issue is whether Nissley knew that he could encounter a maintenance tractor on the racing track when he was riding around the track and whether he assumed that risk.

Nissley asserts that he did not know or anticipate that a maintenance tractor would be on the track and that assuming the risk of hitting it was not included within the scope of the release. In support of this argument, he relies on *Crews v. Seven Springs Mountain Resort,* 874 A.2d 100 (Pa. Super. 2005), in which our Superior Court had to "decide whether the Skier's Responsibility Act and the exculpatory language on [Crews'] lift ticket bar

a claim for injuries sustained when [he] was struck from behind by a high school student allegedly snowboarding while under the influence of alcohol." *Id.* at 100-101. The court reversed the trial court's grant of judgment on the pleadings for Seven Springs, because it concluded "that a collision with an underage drinker on a snowboard cannot be considered an inherent risk of downhill skiing." *Id.* at 104. It defined an inherent risk of skiing as "one that cannot be removed without altering the fundamental nature of skiing." *Id.* at 105.

Nissley asserts several reasons why he could not have known or anticipated the risk that caused his injuries. He argues that Candytown has scheduled work days for maintenance on the track and that the track is closed to riders on those designated days. The day of the incident was not a scheduled work day. He contends that, as he approached the jump, he was unable to see the tractor on the other side and that he did not see the tractor until he was airborne. He also contends that colliding with a maintenance tractor is not an inherent risk in motorcycle riding.

Defendants contend that Nissley was aware of the tractor's presence on the track and cite his deposition testimony that he may have passed the tractor on the track 10 to 20 times before the accident. They also point to his testimony that it took him about one minute to complete a lap on the track, and they argue that he therefore saw the tractor numerous times and conceivably about a minute before the accident. They conclude that he knew that he could encounter the tractor on the track and that he, therefore, assumed the risk of colliding with it.

I agree with the defendants that Nissley's deposition testimony establishes that he knew the tractor was on

the track and that he should have known that its presence created a risk to his safety. He chose to continue to ride his motorcycle despite this knowledge.

As to whether colliding with the tractor was an inherent risk, I believe this case is distinguishable from the skiing accident in *Crews.* In *Crews,* the collision with the underage drinker was not an inherent risk, because that risk could be removed without changing the fundamental nature of the sport. However, I do not believe the same can be said about removing a maintenance tractor from a motorcycle track. Track maintenance is essential to the sport of motorcycle riding to ensure safe riding conditions, and removing maintenance tractors from motorcycle tracks would not have the same positive result as removing underage drinkers from ski slopes. I conclude that the facts in this case presented an inherent risk and that Nissley can reasonably be held to have known or anticipated it.

For all of these reasons, I conclude that the release was enforceable and that it bars Nissley's recovery. Consequently, the defendants are entitled to summary judgment, and I enter the following:

## ORDER

For the reasons stated in the foregoing opinion, the defendants' motion for summary judgment is granted. Judgment is entered in favor of the defendants and against the plaintiff on all of the counts of the complaint.