**Gordon G. BELL, Appellant**

v.

**William A. DEAN, III, Appellee.**

Superior Court of Pennsylvania.

Argued June 9, 2010.

Filed Aug. 16, 2010.

---

Craig R. Milsten, York, for appellant.

Evan Kline, York, for appellee.

BEFORE: MUSMANNO, LAZARUS, and OLSON, JJ.

OPINION BY LAZARUS, J.:

Gordon Bell appeals from the order entered in the Court of Common Pleas of York County granting summary judgment in his negligence action against defendant, William Dean, III. After careful review, we conclude that the Pennsylvania Skier's Responsibility Act ("the Act") bars Bell's recovery for damages for injuries sustained when Dean collided with him while the two skied and snowboarded at a recreational ski area. Accordingly, we affirm.

The learned trial court set forth the relevant facts and procedural history explicitly:

On January 19, 2006, [Bell] was skiing and [Dean] was snowboarding at Ski Roundtop, a recreational ski area. While [Bell] and [Dean] were progressing down an "expert level" ski slope called "Ramrod," [Bell] and [Dean] collided, causing physical injury to [Bell]. [Bell] claims that prior to the accident, [he] was slowly traversing down the expert ski slope and [Dean] was coming straight down the expert ski slope. Other than claiming that [Dean] was traveling at a high speed down the steeper "headwall" of the expert slope while failing to keep a proper lookout, [Bell] does not claim that [Dean] deviated in any other way in the manner he was snowboarding.

At the time of the incident, [Bell] was engaged in his activities as a Certified Ski Patroller and has been a ski patroller for forty-four years. [Defendant] had been snowboarding for eight years, at a frequency of five to seven times per year.

This case was initiated by a Writ of Summons filed on December 4, 2007 and reissued on February 14, 2008 and March 4, 2008. On March 7, 2008, [Bell] filed a Complaint, [to] which [Dean] preliminarily objected upon proper service. On May 30, 2008 Plaintiff filed a second Complaint which was identical to the March 7, 2008 Complaint. The Complaint stated that the accident, injuries, and damages sustained by [Bell] are the direct and proximate result of the negligent, careless, and reckless manner in which [Dean] was snowboarding. On July 14, 2008, [Dean]'s Preliminary Objections were denied, and [Dean] filed an Answer with New Matter to [Bell]'s Complaint on July 21, 2008. [Dean]'s Motion for Summary Judgment was filed on June 15, 2009, and oral argument on the motion was held on September 18, 2009.

Trial Court Opinion, 9/22/09, at 2–3 (internal citations omitted).

By opinion, dated September 22, 2009, the court granted Dean's motion for summary judgment. Bell filed the instant appeal and raises the following issue for our review:

WHETHER THE COURT ERRED AS A MATTER OF LAW IN FINDING THAT COLLIDING WITH A SNOWBOARDER WHO IS TRAVELING AT A HIGH SPEED DOWN A STEEP EXPERT SLOPE WHILE NOT KEEPING A PROPER LOOKOUT OR SNOWBOARDING UNDER CONTROL OR WITHIN THE LIMITS OF HIS ABILITIES IS AN INHERENT RISK OF DOWNHILL SKIING?

Appellant's Brief, at 4.

Our standard of review of an appeal from the grant of summary judgment is well-settled:

A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary. In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case

and on which it bears the burden of proof . . . establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Murphy v. Duquesne University of the Holy Ghost,* 565 Pa. 571, 777 A.2d 418, 429 (2001) (internal citations omitted).

At issue in this case is the Pennsylvania Skier's Responsibility Act, which provides:

(c) DOWNHILL SKIING.—

(1) The General Assembly finds that the sport of downhill skiing is practiced by a large number of citizens of this Commonwealth and also attracts to this Commonwealth large numbers of nonresidents significantly contributing to the economy of this Commonwealth. It is recognized that as in some other sports, there are inherent risks in the sport of downhill skiing.

(2) The doctrine of voluntary assumption of risk as it applies to downhill skiing injuries and damages is not modified by subsections (a) and (b).

42 Pa.C.S.A. § 7102(c).[1]

The doctrine of comparative negligence as set forth in 42 Pa.C.S.A. § 7102(a)–(b) has superseded, in large part, the common law doctrine of assumption of the risk. However, in section 7102(c), the legislature specifically retained the doctrine of assumption of the risk as a defense with respect to the sport of downhill skiing. 42 Pa.C.S.A. § 7102(c)(2); *Hughes v. Seven Springs Farm, Inc.,* 563 Pa. 501, 762 A.2d 339 (2000). In this

---

1. The Pennsylvania Skier's Responsibility Act was included as an amendment to 42 Pa. C.S.A. § 7102 (Comparative Negligence). Section 7102(a) states that comparative negligence is the general rule in Pennsylvania, while § 7102(b) sets forth the guidelines for recovering damages from joint defendants.

context, the defense has been characterized as a "no-duty" rule, based upon the general principle that "a plaintiff who voluntarily assumes a risk of harm arising from the negligent or reckless conduct of the defendant cannot recover for such harm." *Hughes*, at 341 citing *Restatement Second of Torts*, § 496A. Thus, where this defense applies, defendant is said to owe no duty of care to plaintiff, and plaintiff's negligence cause of action must fail. Plaintiff cannot prove defendant's negligence without first proving defendant owed him a duty of care. *Hughes*, at 341.

▇ Here, Bell's suit against Dean contends that he suffered injuries after Dean struck him as a result of Dean snowboarding negligently.[2] Because Bell's suit is against a snowboarder and fellow patron of the ski area, we must first address an issue we raise *sua sponte* ; whether the Act applies to bar a personal injury action between patrons of the ski area. We have found no authority wherein the appellate courts of this Commonwealth have applied the Act in such a manner.[3] Rather, our appellate courts have applied the Act to bar recovery in negligence actions brought by patrons of the ski resort to recover for damages against the ski resort owner or operator. Bell's claim therefore requires us to determine the scope of the Act.

▇ The "application of a statute is a question of law, and our standard of review is plenary." *Commonwealth v. Baird*, 856 A.2d 114, 115 (Pa.Super.2004). When interpreting a statute, the Statutory Construction Act dictates our approach.

*See* 1 PA. CONS.STAT.ANN. § 1921; *Baird*, 856 A.2d at 115. "[T]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly...." *Id.* "[T]he best indication of legislative intent is the plain language of a statute." *Commonwealth v. Bradley*, 575 Pa. 141, 834 A.2d 1127, 1132 (2003).

Upon review of the Act, we conclude that nothing in the Act's language precludes its application to negligence actions between patrons (whether they be skiers or snowboarders) of the ski resort or ski area. In other words, the Act cannot be said to apply only to negligence actions brought by patrons against ski resort owners and operators. Rather, the Act simply retains the common law doctrine of assumption of risk "as it applies to downhill skiing injuries." 42 Pa.C.S.A. § 7102(c)(2). The Act and the "no duty" common law doctrine of assumption of the risk, which it preserves, therefore, apply equally as a potential bar to negligence actions between patrons and ski resorts and between two or more patrons of a ski resort.

In *Hughes*, our Supreme Court established a two-part test for determining whether summary judgment is appropriate in a suit for injuries sustained while skiing:

First, this Court must determine whether [Appellant] was engaged in the sport of downhill skiing at the time of [his] injury. If that answer is affirmative, we must then determine whether the risk ... is one of the "inherent risks" of downhill skiing, which [Appel-

---

2. As this Court has done before, we decline to distinguish between skiing and snowboarding for the purposes of our disposition. *See Crews v. Seven Springs Mt. Resort*, 874 A.2d 100, 104 n. 5 (Pa.Super.2005).

3. In *Cruz v. Gloss*, 57 Pa. D. & C.4th 449 (2002), the Common Pleas Court of Carbon County did address this issue in a nonbinding

published opinion following denial of defendant's motion for summary judgment. The court found that the Act did apply to causes of action arising from downhill skiing injuries sustained as a result of a collision between skier and snowboarder at the Blue Mountain Ski Area.

lant] must be deemed to have assumed under the Act. If so, then summary judgment was appropriate because, as a matter of law, [Appellant] cannot recover for [his] injuries.

*Id.* at 344. The Court defined those risks inherent to the sport of downhill skiing as those that are "common, frequent, and expected." *Id.* In *Hughes,* plaintiff was struck from behind at the bottom of the ski slope by an unidentified skier while plaintiff skied towards the ski lift. Plaintiff sued the ski resort seeking damages for her injuries. On appeal, a split panel of this Court reversed the grant of summary judgment in favor of the ski resort after determining that the ski resort had failed to establish plaintiff's injury was a result of an occurrence inherent to the sport of skiing. *Id.* Our Supreme Court reversed. After concluding that plaintiff had been engaged in the sport of downhill skiing, the Court addressed the second prong of its two-part test, and stated:

> *[T]he risk of colliding with another skier is one of the common, frequent and expected risks inherent in downhill skiing.* Indeed, other skiers are as much a part of the risk in downhill skiing, if not more so, than the snow and ice, elevation, contour, speed and weather conditions.

*Id.* at 344 (emphasis added). Accordingly, plaintiff's "unfortunate but all-too-common collision" at the base of the slope was "one of the common risks of the sport of downhill skiing." *Id.* Thus, the Court held that the ski resort owed no duty to protect plaintiff from this inherent risk and was entitled to summary judgment as a matter of law. *Id.* at 344–45.

The holding in *Crews v. Seven Springs Mt. Resort,* 874 A.2d 100 (Pa.Super.2005),

is not inapposite to our reasoning. There, this Court determined that a collision between a skier and a snowboarder, under certain circumstances, was *not* a risk inherent to the sport. *Id.* at 105. Plaintiff had brought suit against the ski resort and alleged that the *underage snowboarder had been drinking alcoholic beverages on the ski resort's premises. Id.* at 101. We concluded that a collision with an "underage drinker on a snowboard" could not be considered an inherent risk of the sport. *Id.* at 104. The trial court had, therefore, improperly concluded that the snowboarder was entitled to judgment on the pleadings.[4] Our reasoning relied, in large part, upon having defined an inherent risk as "one that cannot be removed without altering the fundamental nature of skiing." *Id.* at 105 citing *Freeman v. Hale,* 30 Cal. App.4th 1388, 36 Cal.Rptr.2d 418, 421–22 (1994). Furthermore, despite having concluded that a collision with an "underage drinker on a snowboard" was not an inherent risk of downhill skiing, we *twice* indicated that plaintiff's action would have failed had the claim arisen from a mere collision with another skier or snowboarder. *See Crews,* 874 A.2d 100 at 102, 104.

Recently, in *Chepkevich v. Hidden Valley Resort, L.P.,* — Pa. —, 2 A.3d 1174 (2010), our Supreme Court addressed the Act, *Hughes,* and *Crews.* In *Chepkevich,* plaintiff was injured after falling from a ski lift. Plaintiff brought suit against the ski resort asserting that the lift operator's negligence caused her to fall from the ski lift resulting in her injuries. *Id.* at 1176–77. In concluding that the ski resort was entitled to summary judgment as a matter of law, our Supreme Court first determined that boarding and riding a ski lift was an inherent aspect of the sport of

---

**4.** Judge Lally–Green dissented and would have held, pursuant to *Hughes,* that Crews had assumed the inherent risk of colliding with another person and that recovery was barred by the Act. *Crews,* at 107–08.

downhill skiing.[5] *Id.* at 1195–96. The Court criticized *Crews* for having defined an inherent risk as "one that cannot be removed without altering the fundamental nature of skiing." *Chepkevich,* at 1187 n. 14. Accordingly, the Court reaffirmed that those risks inherent to the sport of downhill skiing are those that are "common, frequent, and expected." *Id.* The Court then determined that falling from a ski lift was a common, frequent, and expected risk and therefore a risk inherent to the sport of downhill skiing. The Court reasoned that "[i]t would frustrate the purpose of the Act were we to hold that it mandates a broad reading of the 'sport of skiing,' but simultaneously requires a narrow definition of what risks are 'inherent' to that sport." *Chepkevich,* at 1198. Accordingly, the Court rejected plaintiff-appellee's argument that she had not assumed the "specific risk" of the ski lift operator's negligence. Rather, the Court held that her injury arose from the "general risk" of falling from a ski lift—a risk inherent to the sport—which she had assumed. Thus, the ski resort owed her no duty and she was barred by the Act from recovering for damages against the ski resort.

In the case *sub judice,* the crux of Bell's argument is that the risk of another skier or snowboarder's negligence is not a risk inherent to the sport of downhill skiing. Appellant's Brief, at 7.[6] Bell's contention is that the only risks inherent to the sport of downhill skiing are those related to the "the pitch of the mountain, the slipperiness of the snow and ice on the mountain and the intentional design of the equipment used to accomplish the sport of downhill skiing or snowboarding." *Id.* As such, Bell contends that the trial court erred in granting summary judgment and that this case should have been submitted to a jury to determine whether Dean was negligent. We disagree.

■ Bell's argument is essentially the same argument rejected by our Supreme Court in *Chepkevich.* In *Chepkevich,* plaintiff-appellee argued that she did not assume the "specific risk" of the lift operator's negligence when she boarded the ski lift she fell from. To the contrary, our Supreme Court concluded that her action for damages arose from the "general risk" of falling from the ski lift which was common, frequent, and expected, and therefore an inherent risk to the sport of downhill skiing that she had assumed. Here, Bell argues similarly that his suit arises from the specific risk of Dean's negligent snowboarding, a risk Bell did not assume. We, however, reject Bell's assertion that his action arises from the "specific risk" of another skier or snowboarder's alleged negligence. Rather, pursuant to *Chepkevich,* we conclude that Bell's injury arose from the "general risk" of colliding with another skier or snowboarder. Notably, this risk has been deemed inherent to the sport of downhill skiing and one that Bell assumed by participating in the sport.

---

**5.** Our Supreme Court has broadly defined those acts which constitute the sport of the downhill skiing. *See Hughes,* 563 Pa. 501, 762 A.2d 339 at 344 ("Obviously, the sport of downhill skiing encompasses more than merely skiing down a hill. It includes those other activities directly and necessarily incident to the act of downhill skiing. Such activities include boarding the ski lift, riding the lift up the mountain, alighting from the lift, skiing from the lift to the trail and, after a run is completed, skiing towards the ski lift to start another run or skiing toward the base lodge or other facility at the end of the day.").

**6.** The first prong of the *Hughes* test is clearly met as Bell and Dean were engaged in the sport of downhill skiing. Bell and Dean were admittedly skiing and snowboarding down the same slope immediately before the parties collided.

*Hughes, supra.* For these reasons, his attempt to narrowly define the risk from which his injury arose, just like plaintiff-appellee in *Chepkevich,* is unavailing.

Bell, who had been traversing slowly down the ski slope, was struck on his right side by Dean as he snowboarded down the slope. Specifically, Bell testified "I made a slow turn to the right while I was looking down the hill and don't remember anything after that." Gordon G. Bell Deposition, 4/23/09, at 65. Dean recalled snowboarding down the slope, "looking down the run," before a skier came from behind him from "left to right" and cut him off. The two then collided. William A. Dean, III Deposition, 3/11/09, at 37. Dean added that he did not notice Bell until a "split second" before impact. *Id.* at 41. As stated, the facts evidence an accidental collision between skier and snowboarder. There is nothing to suggest that Dean intentionally struck Bell or was snowboarding abnormally. Rather, we are presented only with Bell's unsupported allegations that Dean was snowboarding "out of control," "beyond his abilities," and without keeping a "proper lookout" to avoid colliding with Bell. Appellant's Brief, at 9; 13.

In *Hughes,* our Supreme Court stated that "other skiers are as much a part of the risk in downhill skiing, *if not more so,* than the snow and ice, elevation, contour, speed and weather conditions." *Id.* at 344 (emphasis added). This certainly makes sense. In this sport, skiers and snowboarders are carried to the top of a mountain to ski and snowboard down "runs" of varying difficulty, just to do it all over again. Most, if not all, skiing or snowboarding takes place amongst other skiers and snowboarders. Rarely, is it the case that a skier finds him or herself traversing the slopes alone, unaccompanied by others. Each participant on the slope is of varying age, coordination, and skill. Some are beginners, some are more experienced, but few are experts or professionals. Moreover, participants travel down the mountain at different speeds. Some travel down the slope in a straight line with greater speed than those who slalom down the mountain in a wide S-type pattern. That this varied group of skiers and snowboarders alike, for recreation, proceed voluntarily down the side of a mountain together, simultaneously, creates the obvious danger for mishaps leading to collisions among them.[7] The causes of such mishaps would certainly include incidents, similar to Bell's allegations, of ordinary carelessness or inadvertence. Indeed, general allegations of this sort could serve as the basis upon which ·many skiing or snowboarding collisions occur. To accept Bell's argument, we would effectively carve out a broad exception to our Supreme Court's clear directive in *Hughes* that collisions among skiers and snowboarders are common, frequent, and expected and, therefore, risks inherent to the sport of downhill skiing that skiers and/or snowboarders like Bell assume under the Act. *Hughes, supra.* This we cannot do.

Moreover, we reject Bell's assertion that our affirmance here would somehow act as a "bar to all claims arising out of collisions on a ski slope," thus leading to an "absurd level of disorder on the ski slopes of the Commonwealth." Appellant's Brief, at 12. Primarily, Bell's suggestion overlooks this Court's decision in *Crews v. Seven Springs Mt. Resort,* 874 A.2d 100 (Pa.Super.2005), where we held that a collision between skier and snowboarder, where one participant was allegedly intoxicated, was *not* a risk inherent to the sport of downhill ski-

---

7. Bell, an experienced skier, admitted he was well aware of the common risk of collisions between skiers and snowboarders. *See* Gordon G. Bell Deposition, 4/23/09, at 80.

ing and outside the Act's purview. *Id.* at 105. More importantly, however, neither the Act's language nor the decisions cited herein lend credence to Bell's fear that skiers or snowboarder alike "would be free to ski as fast as they want and as out of control as they want" and "injure each other with impunity." Appellant's Brief, at 12. Rather, plaintiffs are barred by the Act from recovery for injuries sustained while engaged in the sport of downhill skiing where the injury arises from an inherent risk of skiing, defined as those risks that are "common, frequent, or expected." *Hughes, supra; Chepkevich, supra.* Our Supreme Court has, therefore, clearly defined, as a matter of law, the scope within which recovery is barred and permitted. Thus, Bell's assertion is unfounded.

In sum, our legislature has expressly recognized that the sport of downhill skiing is an economic interest to this Commonwealth and that there are risks inherent to the sport. 42 Pa.C.S.A. § 7102(c)(1). Our legislature has accounted for these risks by preserving the common law doctrine of assumption of the risk in this area. 42 Pa.C.S.A. § 7102(c)(2). Indeed, our Supreme Court has specifically accounted for the exact risk of harm Bell's claim arises from and categorized this risk—the risk of colliding with another skier or snowboarder—as a risk of downhill skiing that is common, frequent, expected and, therefore, inherent to the sport of downhill skiing. *See Hughes, supra,* at 344; *Crews, supra,* at 102, 104.

Because of this, by law Bell is said to have assumed the risk and Dean owed no duty to protect Bell from this risk. Thus, Dean cannot be negligent. *See Chepkevich,* at 1196–97. The trial court, therefore, properly granted Dean's motion for summary judgment, as he was entitled to judgment as a matter of law.[8]

Order affirmed.

**8.** The trial court entered summary judgment in favor of Dean after concluding that Bell failed to meet his burden of producing sufficient evidence to support his claim for negligence, and therefore there were no issues of material fact for a jury to consider. Although the court did not enter summary judgment based upon the finding that Dean owed Bell no duty of care under the Act, its opinion addressed several of the cases cited herein and applied them to the facts of this case. We, however, affirm the court order granting Dean summary judgment as a matter of law because Bell's recovery is barred by the Act. *See Erdely v. Hinchcliffe & Keener, Inc.,* 875 A.2d 1078, 1088 (Pa.Super.2005) (providing that an appellate court may affirm the decision of the trial court when it is correct on any legal ground without regard to the ground on which the court relied.).