**Chang v. Camelback Ski Corp.**

C.P. of Monroe County, no. 37 Civil 1999.

*Philip D. Lauer,* for plaintiffs.
*Hugh M. Emory,* for defendant.

WALLACH MILLER, *J.,* August 30, 1999—

## VOLENTI: NON-FIT INJURIA

On January 7, 1997, 17 and a half year old Joseph Chang purchased a ski lift ticket and went skiing at Camelback Ski Area located in Tannersville, Monroe County, Pennsylvania. When he got off the ski lift and began skiing down a slope, he realized that the slope was covered with ice. He alleges the ice prevented him from having any control of the direction or speed of his skis. As a result of the icy slope, Chang claims he was propelled off the slope and crashed into a ski lift structure, suffering injuries.

Chang further claims that since he was a novice and possessed only minimal skiing ability,[1] he could not have known or reasonably foreseen the outrageously dangerous icy condition of the slope. He further alleges that the icy condition was caused due to a severe weather anomaly.

On January 5, 1999, Chang and his parents filed a summons against Camelback followed by a complaint on February 17, 1999. The complaint included counts for negligence, breach of warranty, loss of filial consortium and a request for reimbursement for an adult child's past and future medical bills. Camelback filed preliminary objections on March 2, 1999.

Plaintiffs filed an amended complaint on March 22, 1999, amending only paragraph one of the original complaint and pleading that Joseph Chang was a minor, and not an adult, as originally alleged.

Camelback again filed preliminary objections on April 12, 1999 in the nature of a demurrer/motion to strike the negligence claim; a demurrer/motion to strike the second cause of action which is based on a breach of warranty that the ski slope was not reasonably safe and fit for the purposes for which it was used; and, a demurrer to the claims of plaintiff parents for loss of filial consortium.

After reviewing the parties' briefs and hearing oral argument, we are prepared to rule on defendant's preliminary objections.

A demurrer tests the legal sufficiency of the pleadings. In determining the legal sufficiency of a complaint,

---

1. At oral argument, we learned that Chang had chosen to ski a "black diamond," or expert trail, called "The Rocket."

at this stage of a proceeding, the court must accept as true every relevant fact sufficiently averred in the plaintiffs' complaint together with every inference favorable to the non-moving party which is fairly deducible therefrom. *Ganassi v. Buchanan Ingersoll PC,* 373 Pa. Super. 9, 540 A.2d 272 (1988). However, we need not accept as true conclusions of law, inferences unwarranted by the admitted facts, argumentative allegations or expressions of opinion. *Graham v. Harleysville Insurance Co.,* 429 Pa. Super. 444, 632 A.2d 939 (1993).

Since the sustaining of a demurrer results in a denial of a pleader's claim or a dismissal of his suit, a preliminary objection in the nature of a demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim for which relief may be granted. If the facts as pleaded state a claim for which relief may be granted under any theory of law, then there is sufficient doubt to require the preliminary objection in the nature of a demurrer to be rejected. *County of Allegheny v. Commonwealth of Pennsylvania,* 507 Pa. 360, 490 A.2d 402 (1985).

Defendant argues that Count I of plaintiffs' complaint fails to state a cause of action in negligence. To establish a viable cause of action in negligence, the pleader must aver in his complaint the following elements:

"(1) A duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks.

"(2) A failure on the person's part to conform to the standard[s] required: a breach of the duty.

"(3) A reasonably close causal connection between the conduct and the resulting injury.

"(4) Actual loss or damage resulting to the interest of another." *Ferry v. Fisher,* 709 A.2d 399, 402 (Pa. Super. 1998), citing *Prosser & Keaton on Torts* §30 (5th ed. 1984).

Moreover, the mere happening of an accident does not entitle the injured person to a verdict; a plaintiff must show that the defendant owed him a duty and that the duty was breached. *Engel v. Parkway Co.,* 439 Pa. 559, 266 A.2d 685 (1970).

In reading the complaint and giving all the benefit, including inferences, to the plaintiffs, the non-moving party, we find they allege that Camelback owed a duty to them to inspect, test and warn plaintiff of the icy slope, to stop the plaintiff from using this icy slope because the defendant knew it was unreasonably dangerous in light of the icy conditions; to instruct and render assistance to the plaintiff once he was on the icy slope and to provide to plaintiff a slope that was safe and not defective (we infer this means no ice on the slope).

The thrust of Camelback's demurrer is that it has no duty to protect skiers from the inherent risks of skiing and that icy slopes and icy conditions on the slopes are inherent risks in downhill skiing. They further argue that plaintiff was a voluntary participant, chose to ski that particular day and that a ski trail consisting of snow, can and will develop icy conditions through skier traffic, changes in temperature and other factors which affect the outdoors during the winter. Further, they argue that they have no control over the weather. Thus, we must determine if, under the law, there is a recognizable duty of defendant Camelback to protect a skier from an icy slope.

The Pennsylvania Legislature passed the "Skiing Responsibility Act" on March 27, 1980, P.L. 52 (no. 19).

This Act was repealed by section 222 of the JARA Continuation Act of October 5, 1980, P.L. 693 (no. 142). However, its substance was codified as subsection "c" of the Comparative Negligence Act, 42 Pa.C.S. §1702(c) which provides:

"(c) Downhill skiing.

"(1) The General Assembly finds that the sport of downhill skiing is practiced by a large number of citizens of this Commonwealth and also attracts to this Commonwealth large numbers of non-residents significantly contributing to the economy of this Commonwealth. It is recognized that as in some other sports, there are inherent risks in the sport of downhill skiing.

"(2) The doctrine of voluntary assumption of risk as it applies to downhill skiing injuries and damages is not modified by subsections (a) and (b)."

Assumption of risk is a legal doctrine which holds that a defendant, as a matter of law, does not owe a duty of care to a plaintiff who voluntarily exposes himself to the risks inherent in an activity. *Jones v. Three Rivers Management Corp.,* 483 Pa. 75, 394 A.2d 546 (1978); *Pagesh v. Ucman,* 403 Pa. Super. 549, 589 A.2d 747 (1991); *Valeo v. Pocono International Raceway Inc.,* 347 Pa. Super. 230, 500 A.2d 492 (1985); *Iervolino v. Pittsburgh Athletic Co. Inc.,* 212 Pa. Super. 330, 243 A.2d 490 (1968); *Schentzel v. Philadelphia National League Club,* 173 Pa. Super. 179, 96 A.2d 181 (1953) and *Missar v. Camelback Ski Resort,* 30 D.&C.3d 579 (1984).

Our appellate courts have found the rationale behind this rule to be that persons conducting the activity have no duty to warn or protect participants against risks which are common, frequent, expected and inherent in the activity itself. Thus, persons conducting an event are not

negligent for failing to warn or protect a participant against risks which are inherent in the activity. *Id.*

While the Pennsylvania statute does not define the inherent risks in downhill skiing, we are able to look to other states whose legislatures have enacted similar legislation. For example, New York has passed General Obligation Law no. 18-101 which states:

"The legislature finds . . . (1) that downhill skiing, like many other sports, contains inherent risks, including, but not limited to the risks of personal injury or death or property damage, which may be caused by variations in terrain or weather conditions, surface or subsurface snow, ice conditions, bare spots or areas of thin cover . . . ."

At New Jersey Revised Statutes §5-13-5, it provides:

"A skier is deemed to have knowledge of and to assume the inherent risks of skiing . . . created by weather conditions, conditions of snow, trails, slopes, other skiers and all other inherent conditions . . . ."

Our neighbor to the west, Ohio, has enacted Ohio Revised Code Annotated §4169.08(A) which states in part:

"The general assembly recognizes that skiing as a recreational sport is hazardous to skiers regardless of all feasible safety measures that can be taken. It further recognizes that a skier expressly assumes the risk of and legal responsibility for any losses or damages that result from the inherent risks of skiing, which include but are not limited to, losses or damage caused by variations in terrain; surface or subsurface snow or ice conditions; bare spots, rocks, trees, stumps and other forms of forest growth or debris . . . ."

We have also reviewed similar statutes enacted in Connecticut, Maine, Massachusetts and New Hampshire

and find all of them include ice or ice conditions as an inherent risk of the sport of downhill skiing.

Skiing is a dangerous and hazardous sport. If we were to find that plaintiff pled a viable cause of action in this case under a theory that defendant was negligent in not maintaining a perfectly groomed downhill ski slope with no ice or other conditions usually found on ski slopes, particularly here where plaintiff tells us that the ice was caused by a weather "anomaly," what would happen to one of the most popular winter sports in America? See *Podvin v. Somerton Springs Swim Club Inc.*, 406 Pa. 384, 178 A.2d 615 (1962) (plaintiff slipped on sand while playing volleyball).

Thus, after a close reading of the complaint, we find that plaintiff voluntarily purchased a lift ticket, went to the top of the mountain, exited the lift, chose a ski trail, lost control of his skis on the way down due to ice on the trail, had an accident and was injured. Under the facts averred, we find plaintiff has not pled a legally sufficient cause of action and defendant is entitled to a demurrer on Count I of the complaint.

Plaintiffs' second count asserts liability on an alleged breach of expressed and implied warranty that the ski slope was reasonably safe and fit for the purposes for which it was being used. This count appears to be further based on the fact that the plaintiff purchased a ski lift ticket. In their brief, plaintiffs argue that the lift ticket was purchased "in reliance on the expressed or limited warranties that the ski slope was reasonably safe and fit for the purposes for which it was being used." (Plaintiffs' brief, p. 11.) Plaintiffs cite three cases to bolster their argument. All three cases discuss the implied warranty of habitability in contracts between builders/sell-

ers of new homes to residential purchasers. Plaintiffs ask us to analogize those contractual situations to the facts in this case.

Defendant argues that Pennsylvania has adopted the express and implied warranty principles set forth in the Uniform Commercial Code and under 13 Pa.C.S. §§2313 and 2314. The UCC applies these warranties to contracts or transactions for the sale of goods. See also, 13 Pa.C.S. §2102. The UCC defines goods as all things (including specially manufactured goods) which are movable at the time of identification of the contract for other than money in which the price is to be paid, investment securities . . . and things in action. 13 Pa.C.S. §2105(a). This definition embraces every species of property other than real estate, choses in action or investment securities. In paragraph 43 of plaintiffs' complaint, they allege as follows:

"(43) The defendant breached its implied and expressed warrant of fitness for a particular purpose in permitting the plaintiff to ski said slope which was unreasonably unsafe for human beings resulting in injuries and damages to the plaintiff herein and above set forth."

While not articulated fully, we can infer plaintiffs imply that there was a contract between plaintiff and defendant based on the lift ticket where plaintiff paid Camelback for the use of defendant's ski trails and lifts. Even if we were to find such a contract existed, we cannot, under the UCC, find that it involved a transaction in goods, as the use of a ski slope does not fit into the definition of goods in any section of the UCC. A ski slope is not movable, 13 Pa.C.S. §2105(a), and the definition of goods specifically excludes real property.

After a review of plaintiffs' complaint and the relevant law, we find plaintiffs have not pled a viable cause of

action based on warranty and thus grant defendant's demurrer to Count II of plaintiffs' complaint.

Lastly, in Count III, the parents of the minor plaintiff assert claims against defendant for loss of consortium arising from Camelback's negligence and breach of warranty.

The parents claim that they have been deprived of the assistance, society and companionship of their son since the date of the accident up to the filing of their complaint, and they also allege that these deprivations will continue in the future. The parents further allege that these deprivations have constituted and will constitute a great financial loss to them.

. It is well settled in Pennsylvania that our law does not recognize loss of companionship as an element of damage in any relationship other than in a husband and wife relationship. *Jackson v. Tastykake Inc.,* 437 Pa. Super. 34, 648 A.2d 1214 (1994); *Brower v. City of Philadelphia,* 124 Pa. Commw. 586, 557 A.2d 48 (1989), *appeal denied,* 525 Pa. 604, 575 A.2d 569 (1990); *Quinn v. Pittsburgh,* 243 Pa. 521, 90 A. 353 (1914).

Plaintiffs admit in their brief at page 13 that a cause of action for filial consortium does not exist in Pennsylvania but they urge us to ignore this law which has been in place for nearly 100 years. This court is cognizant of a decision issued by the Honorable R. Stanton Wettick Jr. of the Allegheny County Court of Common Pleas in *Ehrman v. Mid-American Waste,* no. 2665-12-00 1998, Allegheny Co., December 14, 1998 (Wettick, J.), allowing recovery for loss of filial consortium in a statutory wrongful death claim. However, in *Verity v. Hershey Medical Center,* 98 CV 3545, Lackawanna Co., May 17, 1999 (Minora, J.), the Honorable Carmen Minora did

not find *Ehrman* persuasive and neither do we. Defendant's demurrer to the paragraphs of the plaintiffs' complaint asserting claims for loss of filial consortium is granted, and said counts and paragraphs are stricken from the complaint.

## ORDER

And now, August 30, 1999, the preliminary objections of the defendant are sustained, and plaintiffs shall have 20 days from the date of this order to file an amended complaint as to Counts I and II.