**Smith-Wille v. Ski Shawne, Inc.**

C.P. of Monroe County, No. 375 CIVIL 2006

*Benjamin N. Gialloreto*, for plaintiff.
*Hugh M. Emory*, for defendants.

WILLIAMSON, *J.*, January 6, 2014—This matter comes before us on a motion for summary judgment filed by Ski Shawnee Inc., Shawnee Development, Inc., and Shawnee Mountain, Inc. (hereafter "defendants") on October 4, 2013. Pamela Smith-Wille (hereafter "plaintiff") filed a reply to defendants' motion for summary judgment, and a brief in support of plaintiff's reply on November 15, 2013. In the motion for summary judgment, defendants argue that plaintiff's accident was the result of the inherent risk of skiing and as such, no liability should be imposed on Shawnee Mountain. More specifically, defendants stated that the ice which plaintiff encountered, causing her to crash into a fence, was an inherent risk of the sport of downhill skiing. Therefore, defendants argue, that plaintiff, an experienced skier, was injured as the result of the inherent risk of downhill skiing.

Plaintiff initiated this action by filing a praecipe to issue writ of summons on January 19, 2006. Defendants filed a rule on plaintiff to file a complaint against defendants

within twenty (20) days of the rule on February 6, 2006. Plaintiff then filed the complaint on March 8, 2006. In the complaint, plaintiff asserts a premises liability action against defendants, in that defendants created and knew, or should have known of the existence of a dangerous condition. Plaintiff alleges the dangerous condition to be a metal pole covered by PVC piping, which was erected to hold a vinyl fence on the ski slope. According to plaintiff, said PVC piping had no padding or protection to safeguard the plaintiff when she his the piping while skiing. The icy conditions caused plaintiff to lose control and run into the piping. This caused plaintiff to sustain injuries and damages which are the basis of this action. Plaintiff also argues there should have been a warning as to icy skiing conditions.

Defendants filed an answer and new matter on March 21, 2006. Plaintiff filed an answer to new matter on April 24, 2006. Defendants subsequently filed an answer and new matter for defendants Ski Shawnee, Inc. on June 5, 2006. Plaintiff then filed an answer to new matter on June 15, 2006. Following initial discovery, depositions and pleadings, defendants filed this motion for summary judgment on October 4, 2013. Upon review of the parties' briefs, and following oral argument, we are now ready to dispose of defendants' motion.

## DISCUSSION

Summary judgment may be granted pursuant to Pennsylvania Rule of Civil Procedure 1035.2 where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Thompson Coal Co., v. Pike Coal Co.*, 412 A.2d 466, 468-69 (Pa. 1979). Summary Judgment is properly entered where the

pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, demonstrate that no genuine, triable issue of fact exists and that the moving party is entitled to judgment as a matter of law. Pa. R.C.P. 1035(b); *Cosmas v. Bloomingdales Bros., Inc.*, 660 A.2d 83, 85 (Pa. Super. 1995).

Summary Judgment may be granted only in cases where the right is clear and free from doubt. *Musser v. Vilsmeier Auction Co., Inc.*, 562 A.2d 279, 280 (Pa. 1989). The court must examine the record in the light most favorable to the non-moving party and resolve all doubts against the moving party. *Davis v. Pennzoil Co.*, 264 A.2d 597 (Pa. 1970). Moreover, the burden is on the moving party to prove that no genuine issue of material fact exists. *Long v. Yingling*, 700 A.2d 508, 512 (Pa. Super. 1997). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Thompson*, 412 A.2d at 469.

In response, the non-moving party may not rest upon the pleadings, but must set forth specific facts demonstrating a genuine issue for trial. *Phaff v. Gerner*, 303 A.2d 826 (Pa. 1973). The court may also accept as true all well-pled facts contained in the non-moving party's pleadings. *Mattia v. Employment Mut. Cos.*, 440 A.2d 616 (Pa. Super. 1982); *Ritmanich v. Jonnel Enters, Inc.*, 280 A.2d 570 (Pa. Super. 1971). A general denial is unacceptable and deemed an admission where it is clear that the non-moving party has adequate knowledge and that the means of information are within the control of the non-moving party. *Elia v. Olszewski*, 84 A.2d 1889 (Pa. 1951).

The defendants in this case argue that plaintiff's accident was the result of the inherent risks of downhill skiing, for

which no liability can be imposed upon defendants. In their brief in support of summary judgment, defendants state that this case involves one type of assumption of the risk principle — that a person assumes, as a matter of law, risks which are common, frequent and inherent in the activity undertaken by a participant. (Defs.' Br. in Supp. of Mot. for Sum. J. p. 5).[1]

To support this position, defendants direct this court's attention to *Jones v. Three Rivers Management Corp.*, 394 A.2d 546 (Pa. 1978), Pennsylvania Supreme Court case where the court held that an operator of baseball park owes no duty to guard against common, frequent, and expected risks of baseball; duty extends only to foreseeable risks not inherent in baseball activity. The defendant also compares this case to a 1999 Monroe County Court of Common Pleas decision by the Honorable Judge Linda Wallach Miller. In *Chang v. Camelback Ski Corp.*, 43 Pa. D. & C.4th 81 (Monroe Cty. 1999), the plaintiff claimed that as he was skiing down the slope, he realized the snow was covered in a layer of ice. The ice then precluded the plaintiff from skiing under control, and he skied off the slope and into a ski lift structure located at the edge of the slope. In preliminary objections, defendant asserted the accident resulted from an inherent risk of skiing, that being icy conditions located along the edge of the trail. In *Chang*,

---

1. Defendant begins by stating it is generally recognized that there are two types of assumption of the risk. One is voluntary assumption of the risk. Defendant argues this type of assumption of the risk arises when, for example, a skier acknowledges an awareness of the risk which caused his or her injury. (Defs.' Br. in Supp. of Mot. for Sum. J. p. 4). Defendant cites to *Smith v. Seven Springs Farm, Inc.*, 716 E.2d 1002 (3d Cir. 1983), in which the plaintiff collided with a pole located in the middle of a ski trial. In that matter, the plaintiff testified that prior to taking the run in which the accident happened, he knew of the existence of the pole and the other conditions of the slope. On this basis, the court held that the plaintiff voluntarily assumed the risk of injury.

Judge Miller looked to neighboring states' legislation similar to Pennsylvania's "Skiing Responsibility Act," codified at 42 Pa. C.S.A. § 7102(c), to determine what inherent risks are present in downhill skiing. (*Id.* at 87).[2] In doing so, Judge Miller held that "all of them (other states' statutes) include ice or icy conditions as an inherent risk of the sport of downhill skiing." (*Id* at 88). As such, Judge Miller determined that ice and icy conditions on a ski slope are part of the inherent risks envisioned by Pennsylvania's statute.[3] Therefore, Judge Miller found the defendant in *Chang* could not be liable for the injuries suffered by plaintiff as a result of the accident and granted the relief requested by the defendant.

In arguing against the motion for summary judgment, plaintiff states that the issue at hand is whether she "voluntarily assumed" any risks at the time she was about to ski down the slope in question. Plaintiff asserts there were no warnings of the slope conditions for which plaintiff could then have decided whether or not to proceed in skiing. Plaintiff requests this court to consider that due to lack of a warning, the only option available to her once she noticed the icy conditions was to ski down the icy

---

2. 42 Pa. C.S.A. § 7102-Comparative Negligence. § (c) Downhill skiing. — (1) The general assembly finds that the sport of downhill skiing is practiced by a large number of citizens of this Commonwealth and also attracts to this Commonwealth large numbers of nonresidents significantly contributing to the economy of this Commonwealth. It is recognized that as in some other sports, there are inherent risks in the sport of downhill skiing. (2) The doctrine of voluntary assumption of risk as it applies to downhill skiing injuries and damages is not modified by subsections (a) and(a.1).

3. Judge Miller reasoned that if the court were to "find that plaintiff pled a viable cause of action in this cause under a theory that defendant was negligent in not maintaining a perfectly groomed downhill ski slope with no ice or other conditions usually found on ski slopes...what would happen to one of the most popular winter sports in America?" *Chang* at 88 (internal citations omitted).

slope. Plaintiff asserts that there is an issue of material fact as to whether plaintiff's conduct was voluntary once she was at the top of the slope, saw the ice, became concerned, and was left without any reasonable options other than going down the slope. Plaintiff claims defendants were negligent for failing to provide a warning and a safe alternate route once faced with the icy conditions.

Plaintiff distinguishes this case from those cited by the defendants by arguing that her conduct in skiing down the hill in the icy conditions was not voluntary, and that she could not have assumed the risk of any dangerous conditions on the slopes once there was no way to avoid those conditions, namely the ice. (*See* generally Pl.'s Br. in Supp. of Reply to Defs.' Mot. for Summ. J.). Essentially, plaintiff argues to this court that there is a genuine issue of material fact as to whether she could have voluntarily assumed a risk she was unaware of, due to lack of warning, and whether the defendants provided reasonably safe alternatives once plaintiff became aware of the risk.

We recognize the controlling statutory language aptly named the "Skiers Responsibility Act" (hereafter "act") as codified at 42 Pa. C.S.A. § 7102 (c) — Downhill Skiing. This provision is part of Pennsylvania's comparative negligence statute. In the act, the Pennsylvania General Assembly recognizes that the sport of downhill skiing contains "inherent risks." Further, the act goes on to state that the doctrine of voluntary assumption of risk as applied to downhill skiing injuries and damages is not modified by subsections (a) and (a.1) of the comparative negligence statute. This court recognizes, as did Judge Miller in *Chang v. Camelback Ski Corp.*, 43 Pa. D. & C.4th, *supra*, that the general assembly did not define what the "inherent risks" in downhill skiing are. However, this court believes

that ice and icy conditions are part of the "inherent risks" envisioned by the general assembly.

In conjunction with the act, Pennsylvania's appellate courts have addressed the "inherent risk" issue of downhill skiing in several opinions which this court believes to be controlling in the instant matter. In *Hughes v. Seven Springs Farm, Inc.*, 762 A.2d 339 (Pa. 2000), the Pennsylvania Supreme Court considered a case where the plaintiff was injured while skiing after being struck from behind by another skier. After completing a run down the mountain, the plaintiff who was an intermediate skier, was skiing toward the lift at the base of the mountain when she was struck. Plaintiff filed suit against the defendant ski area, alleging negligence. To analyze the case, the court engaged in a two-part inquiry: First, whether the plaintiff was engaged in the sport of downhill skiing at the time of the injury; and second, whether the risk of injury resulted from an "inherent risk" present in the sport of downhill skiing. *Id.* at 344. In making its determination, the court first found that the sport of downhill skiing,

> "encompasses more than merely skiing down a hill. It includes those other activities directly and necessarily incident to the act of downhill skiing. Such activities include boarding the ski lift, riding the lift up the mountain, alighting from the lift, skiing from the lift to the trial and, after a run is completed, skiing towards the ski lift to start another run or skiing toward the base lodge or other facility at the end of the day."

*Id.* at 344. The court went on to hold that the risk of colliding with another skier at the base of a mountain is one of the "'common, frequent and expected' risks 'inherent' in downhill skiing." *Id.* Most relevant to the instant matter,

the court found that "other skiers are as much a part of the risk in downhill skiing, if not more so, than the snow and ice, elevation, contour, speed and weather conditions." *Id.* This shows recognition by the Supreme Court that snow and ice and risks inherent in skiing.

The court also discussed the "inherent risks" present in downhill skiing in *Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174 (Pa. 2010). That case concerned a skier who was injured from falling while attempting to get onto a ski lift. In making its determination of whether falling from a ski lift was an "inherent risk" of the sport of downhill skiing, the court cited its previous decision in *Hughes, supra.* in doing so, the court reaffirmed that the "no-duty" rule — the principle that "an owner or operator of a place of amusement has no duty to protect the user from any hazards inherent in the activity," applies to the operators of ski resorts. *Chepkevich*, 2 A.3d at 1186. Therefore, the court found that,

> "ski resorts have no duty to protect skiers from risks that are 'common, frequent, and expected,' and thus 'inherent' to the sport of downhill skiing. Where there is no duty, there can be no negligence, and thus when inherent risks are involved, negligence principles are irrelevant — the comparative negligence act is inapplicable — and there can be no recovery based on allegations of negligence."

*Id.* The court, in applying the two-part analysis found in *Hughes*, held that the plaintiff's cause of action arose out of a general risk of failing from a ski lift, which was an "inherent risk" of skiing. *Id.* at 1188. The plaintiff was therefore barred from recovering for her injuries.

In 2005, the Pennsylvania Superior Court issued an opinion in *Crews v. Seven Springs Mountain Resort,* 874 A.2d 100 (Pa. Super. 2005). In that case, the plaintiff brought a negligence action against defendant ski resort for injuries received when he was stuck from behind by a high school student who was snowboarding. At the time of the collision, the high school student was allegedly snowboarding while under the influence of alcohol. In issuing its decision, the Superior Court applied the two-part test from *Hughes, supra.* In doing so, the court recognized that colliding with another skier while engaged in the sport of downhill skiing is an "inherent risk". However, the court went on to analyze whether a collision with an underage drinker on a snowboard could be considered an "inherent risk." In holding that it was not, the court stated that an "inherent risk' is one that cannot be removed without altering the fundamental nature of skiing. The risk allegedly encountered instantly by appellant is not one inherent to skiing." *Crews,* 874 A.2d at 105. (The risk being an under-aged, drinking skier.) In essence, this case distinguishes conditions or risks which a reasonable person would consider to be "inherent" in the sport of downhill skiing from those which are not.

In taking the above statutory and case law into consideration, and applying the legal principles therein, this court finds no genuine issue of material fact. This court believes the arguments raised by plaintiff in her response to defendant's motion for summary judgment can be properly addressed by applying the two-part analysis set forth in *Hughes v. Seven Springs Farm, Inc.,* 762 A.2d at 344, supra. First, we must determine whether plaintiff was engaged in the sport of downhill skiing when she sustained the injury. Through the admissions made in

the pleadings, and in the deposition of plaintiff, it is clear to this court that she was engaged in the sport of downhill skiing at the time of her injury. Plaintiff herself testified that she began skiing sometime in the afternoon on the day of the accident. (Pl.'s Dep. 27: 19-23, Dec. 3, 2009.)

We must now determine whether encountering icy conditions while skiing down the beginner trial is one of the "inherent risks" of downhill skiing. Plaintiff argues the voluntariness of her encountering the icy conditions and her not being provided an alternate option to avoid the ice on the beginner slope. The plaintiff further argues she was not adequately warned of the icy conditions nor of the pole and fencing which she ran into when the accident occurred. In opposition, defendants argue that ice and icy conditions are a part of the "inherent risks" present in the sport of downhill skiing, and that they should not be held liable for the accident regardless of a lack of warning of safe alternate access of the slopes.

As quoted above, the Pennsylvania Supreme Court has stated that ice is indeed an "inherent risk" in the sport of downhill skiing. *See Hughes*, 762 A.2d at 344. Moreover, the Pennsylvania Superior Court has defined an "inherent risk" as one which cannot be removed without altering the fundamental nature of skiing. *See Crews*, 874 A.2d at 105. Logically, then, this court must also find that ice and icy conditions are an "inherent risk" of downhill skiing. Further, the arguments set forth by plaintiff are not persuasive. Plaintiff argues of a duty to warn of the icy conditions and of the fencing and poles the plaintiff hit. Consistent with *Hughes, supra,* the owner or operator of the ski area has no duty to protect the user from hazards inherent in the activity. Since ice is an inherent risk of skiing, there is no duty to warn of icy conditions. We also

recognize from a practical standpoint that it would be virtually impossible for a ski area to warn of icy conditions wherever and wherever they may exist.

There also is no duty to warn of the fencing and poles holding the fencing. The fence was located at the edge of the ski trial to prevent skiers from skiing off the trial into woods and/or the chairlift poles. The fencing was made of mesh and was secured to the ground by poles. The fencing also marked the edge of the trial and was notice itself for skiers to stay away from it. The edge of the ski slope, and a support pole for a lift are inherent risks of skiing. Striking a protective fence designating and protecting skiers from the edge of the trial and the chairlift pole is an inherent risk of skiing as well. Therefore, no warning needs to be given.

Plaintiff next argues that the defendants did not provide an alternate route to traverse down the hill once she noticed the icy conditions. However, as with warnings, there is no duty to provide an alternate route. Plaintiff maintains herself as an "intermediate skier." (Pl.'s dep. 34-35.) Being an intermediate skier, plaintiff knew, or reasonably should have known of several other methods in which to reach the bottom of the hill once she noticed the icy conditions. For example, plaintiff could have taken the lift back to the bottom of the hill; or the plaintiff could have traversed down the hill without her skis; the plaintiff could have traversed her way back up the hill without her skis and taken the lift to the bottom; the plaintiff could have stopped skiing and waited for the ski patrol to assist her down the mountain; or the plaintiff could have traversed sideways down the hill with her skis still on. These are all logical methods that an intermediate skier could have employed to safely traverse down the hill once icy conditions were

noticed. Because none of these options were used, and plaintiff encountered the ice, which is an "inherent risk" of downhill skiing, no liability may be imposed upon defendants in this case.

Furthermore, consistent with *Hughes, supra,* the defendants are under no duty to protect a user from any hazards inherent in the activity. Since the ice was an inherent risk, the defendants are under no duty to provide a safe alternate access.

Accordingly, viewing the evidence in a light most favorable to the non-moving party, this court finds there are no genuine issues of material facts as presented through the pleadings, depositions, oral arguments, exhibits and admissions of both plaintiff and defendants. As such, summary judgment is appropriate at this time, and we enter the following order.

## ORDER

And now, this 6th day of January, 2014, upon consideration of defendants' motion for summary judgment, the same is granted. Plaintiff's case is dismissed.