J-A22013-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KATE LIN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SHAWNEE MOUNTAIN SKI RESORT | : | No. 3367 EDA 2024 |
| AND SKI SHAWNEE, INC. | : | |

Appeal from the Order Entered December 11, 2024
In the Court of Common Pleas of Monroe County Civil Division at No(s):
004031-CV-2022

BEFORE:   LAZARUS, P.J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.:               **FILED DECEMBER 23, 2025**

Kate Lin appeals from the order, entered in the Court of Common Pleas of Monroe County, granting summary judgment in favor of Appellees Shawnee Mountain Ski Resort and Ski Shawnee, Inc (collectively, Appellees or Shawnee).  Although we agree with the trial court that Lin's negligence claims are barred by the exculpatory clause in the release she signed, we conclude that she has produced sufficient evidence to survive summary judgment on her gross negligence and recklessness claims.  Thus, after careful review, we affirm in part, reverse in part, and remand for further proceedings.

The trial court summarized the facts of this case as follows:

On January 9, 2022, [Lin] went skiing at [Shawnee Mountain]'s facility with a group of friends.  The weather that day was cold

_____

[*] Former Justice specially assigned to the Superior Court.

and clear. [Lin] had been skiing several times prior to that date, but considered herself a relative novice. Upon arrival at Shawnee, [Lin] rented ski equipment. As part of the ski rental process, [Lin] was provided with and signed a release with the following language:

> RELEASE AND AGREEMENT NOT TO SUE: IN CONSIDERATION OF BEING ALLOWED TO USE SHAWNEE MOUNTAIN SKI AREA'S FACILITIES, **I AGREE THAT I WILL NOT SUE** SKI **SHAWNEE**, INC., d/b/a SHAWNEE MOUNTAIN SKI AREA AND/OR ITS OWNERS, OFFICERS, DIRECTORS, AGENTS AND/OR EMPLOYEES (HEREINAFTER REFERRED TO COLLECTIVELY AS "SHAWNEE MOUNTAIN") **AND WILL RELEASE SHAWNEE MOUNTAIN FROM ANY AND ALL LIABILITY IF I** OR ANY MEMBER OF MY FAMILY **IS INJURED WHILE USING ANY OF THE SHAWNEE MOUNTAIN FACILITIES** OR WHILE BEING PRESENT AT THE SHAWNEE MOUNTAIN FACILITIES, **EVEN IF I CONTEND THAT SUCH INJURIES ARE THE RESULT OF NEGLIGENCE OR ANY OTHER IMPROPER CONDUCT FOR WHICH A RELEASE IS NOT CONTRARY TO PUBLIC POLICY ON THE PART OF SHAWNEE MOUNTAIN.**

[Lin] and her friends spent some time skiing on the "bunny slope," an area specifically set aside for novice skiers to learn and practice. After some time on the "bunny slope," [Lin] and her friend, Willie Xia, left the rest of their group to ski other trails on the mountain. [Lin] successfully skied down a number of different trails on her first trip down the mountain, including one named Greenhouse Slope. According to all of the evidence, [Lin] and [] Xia utilized trails that were marked with a green circle, indicating that they were the easiest on the mountain. [Lin] traveled to the top of the mountain a second time and began to traverse down. The last leg of her trip was again on Greenhouse Slope which converged with several other slopes at the base of the mountain. Hope Lodge is also located at the base of the mountain on a flat area of land, near where the ski slopes end. By all accounts, [Lin] was skiing very fast as she reached the bottom of Greenhouse Slope and she was unable to slow down or stop due to icy conditions. [Lin] saw the ski racks outside of Hope Lodge and she attempted to ski around them. [Lin] was successful at avoiding the ski racks, but she skied into the lodge itself. [Lin], who was wearing a helmet, went head first through a glass window of the lodge. As a result of the collision, [Lin] suffered a broken pelvis

and multiple stomach lacerations which have resulted in considerable scarring.

Trial Court Opinion, 12/11/24, at 1-3 (emphasis added). At the time of the incident, Lin was 21 years old. Lin testified in her deposition that she had been skiing "every year, once a year since [she] was possibly 8." Lin Deposition, 6/16/23, at 163. According to the equipment rental/liability release form Lin filled out on the date of the accident, she categorized herself as a "Type II" or moderate skier and had taken ski lessons in 2006 and 2010. *See id.* at 168.

Xia, who accompanied Lin on her runs that day, signed a witness statement following the incident that alleged the weather and conditions of the snow were the cause of Lin's accident and that Lin "could not slow down as she tried to break [because] the snow was too icy." *See* Willie Xia Witness Statement, 1/9/22, at 1. Xia's statement also indicated that he and Lin had been skiing for two hours on the day of the incident, that he was an "intermediate" level skier, and that he and Lin had skied the Greenhouse Trail once that day before Lin was injured. *Id. See* Additional Comments of Elvis Li, 1/9/22 at 1 (witness stating he watched Lin "coming down the slope at a very high speed, unable to break, likely due to the icy snow from the sleet th[at] morning"); *see also* Creek Fire Company Incident Report, 1/9/22, at 2 (noting Lin reported she "was skiing down the mountain and could not stop due to the ice[,] causing her to strike the picture frame window of the Ski Lodge area and shattering the glass").

On July 15, 2022, Lin filed a personal injury action against Appellees alleging negligence, gross negligence, and recklessness, and seeking both compensatory and punitive damages. *See* Complaint, 7/15/22 at 5-9. Lin's complaint stated that she suffered "severe and permanent injuries [due to] crashing through the window at [Shawnee], including, but not limited to severe lacerations to her abdominal area and [a] broken and displaced pelvis requiring [her] to have surgery [and] has been left with severe and permanent disfigurement of her abdomen[.]" *Id.* at 4. Appellees filed preliminary objections on August 10, 2022, claiming, among other things, that Lin's complaint fails to state a claim for punitive damages where it is "devoid of any facts to support allegations that [Appellees'] acts or omissions were done with evil motive or reckless indifference to the rights of others." Preliminary Objections, 8/10/22, at 4-8. Lin filed a response to Appellees' preliminary objections.

On November 22, 2022, the court overruled Appellees' preliminary objections with the exception that it sustained the objection concerning Lin's separate cause of action for punitive damages. Lin amended her complaint on December 12, 2022, omitting her claim for punitive damages. On February 14, 2023, Appellees filed an answer, new matter, and counterclaim. Appellees' new matter asserted that Lin's claims were barred, as a matter of law, under Pennsylvania's Skiers Responsibility Act (the Act), 42 Pa.C.S.A. §

7102(c),[1] where her accident occurred because she was out of control, as well as due to the fact that Lin had signed a release and waiver before skiing at Shawnee. *See* Answer, New Matter, and Counterclaim, 2/14/23, at 8-10. Appellees' counterclaim asserted a claim for breach of contract, alleging that, when Lin signed the release, she agreed not to sue Appellees for any injuries she may sustain, even if the injuries were the result of Shawnee's negligence

_____

[1] The Act reads, in pertinent part, as follows:

> **(c)  *Downhill skiing.***
>
> **(1)**  The General Assembly finds that the sport of downhill skiing is practiced by a large number of citizens of this Commonwealth and also attracts to this Commonwealth large numbers of nonresidents[,] significantly contributing to the economy of this Commonwealth. It is recognized that[,] as in some other sports, there are inherent risks in the sport of downhill skiing.
>
> **(2)**  The doctrine of voluntary assumption of risk as it applies to downhill skiing injuries and damages is not modified by subsections (a) and (a.1).

42 Pa.C.S.A. § 7102(c).  Thus, notwithstanding this Commonwealth's doctrine of comparative negligence, when our legislature enacted subsection 7102(c), it did so to "specifically retain[] the doctrine of assumption of the risk as a defense with respect to the sport of downhill skiing," ***Bell v. Dean***, 5 A.3d 266, 268 (Pa. Super. 2010), in order to recognize that there is no duty to protect patrons from "obvious and avoidable risks."  ***Hughes v. Seven Spring Farm, Inc.***, 762 A.3d 339, 342 (Pa. 2000).  Accordingly, when the defense under subsection 7102(c) applies, a "defendant is said to owe no duty of care to plaintiff, and plaintiff's negligence cause of action must fail." ***Bell***, ***supra*** at 269 (citation omitted).

or other improper conduct. *Id.* at 11.[2] Lin filed a reply to Appellees' new matter.[3]

On July 22, 2024, Lin filed an expert report, authored by Richard Penniman. *See* Plaintiff's Exhibit 14. Penniman notes that the opinions expressed in his report are based upon his "incident site inspection, [his] education, training[,] and experience,[4] and from the information contained in documents [that] were provided to [him] by [the law firm representing Lin]." Penniman Expert Report, 7/22/24, at 1. Penniman describes the lodge window that Lin skied through as one that "was comprised of an approximately three-foot-high cinder block wall at its base with 10 non-tempered and non-

---

[2] Appellees' counterclaim also asserted that Lin was legally obligated to indemnify Shawnee for any damages she caused at the mountain "pursuant to the terms of the Equipment Rental & Liability Release" she signed. *Id.* at 11-12.

[3] On March 15, 2024, the Honorable C. Daniel Higgins recused himself from this case and the Honorable David J. Williamson was subsequently reassigned to the matter.

[4] Penniman's curriculum vitae, attached to his expert report, indicates that he currently works at Snowbridge Associates as a skiing safety consultant, avalanche specialist, and educator. His consulting work consists of "trail safety and design, mountain operations management, and employee training." Penniman has a Bachelor of Science degree in economics from Santa Clara University and is a professional ski instructor who has conducted clinics, legal seminars on recreational law and liability, and has performed symposia on ski trauma and safety over the past 25 years. In addition to his undergraduate degree, Penniman has been an adjunct professor at several colleges and trained with national ski patrols. Penniman is a member of the American Society of Safety Professionals, a peer review/member of the International Society for Skiing Safety, and is a certified avalanche instructor who has worked at various ski resorts as a patrol director, instructor, and director of skier services.

safety glass windows above." *Id.* at 4. Penniman opined that Shawnee's placement of the ski lodge "at the immediate terminus of the Greenhouse trail . . . is highly unusual in North American ski resort building structures and trail design." *Id.* at 19. Penniman's report also notes that there were "[s]ix separate incident reports from five years prior to [] Lin's collision describing collisions with either the lodge and/or the wooden ski racks immediately in front of the wall." *Id.* The report states that the "configuration of the day lodge and the Greenhouse trail dated back to 1985" and that the majority of collisions that occurred at Shawnee in the area of Lin's accident took place between 1985 and 2017. *Id.* at 5.

In his report, Penniman opines that the "North American mountain resort industry standard custom and best practice" would be to design and build ski trails with a "long deceleration area above the lodges and other out buildings at the base of the trail complexes that allow skiers to naturally reduce speed and come to a stop a sufficient distance above to avoid collisions with such structures." *Id.* At a minimum, Penniman recommended that Shawnee install catch fences between the trails and the lodge and wall padding or even bales of hay above the wooden ski racks and lodge windows to protect skiers from impact. Penniman noted that while other ski resorts, such as Bear Creek, place their lodges at the base of trails, the end of those lodges' trails "do not directly abut the lodge wall or windows as in the case at Shawnee." *Id.* at 6. *See also id.* (Penniman citing to 1986 peer review publication prioritizing safety measures that Shawnee should use for its lodge and trails).

On September 13, 2024, Shawnee filed a motion for summary judgment claiming that Lin's claims: (1) are barred by the Act; (2) are barred by the exculpatory release she signed; and (3) amount to nothing more than ordinary negligence.[5] **See** Motion for Summary Judgment, 9/13/24, at 7-15.[6] On October 11, 2024, Lin filed a pre-trial statement that included six accident report forms from former skiers stating they crashed into Hope Lodge or the ski racks at the base of Greenhouse trail upon their descent. **See** Plaintiff's Pre-Trial Statement, Exhibit 1, 10/11/24. On November 19, 2024, Lin filed a brief in opposition to Shawnee's summary judgment motion, relying heavily upon her expert report, claiming that her action was not barred by the Act and that she has presented a *prima facie* case of Shawnee's gross negligence and/or recklessness that should be permitted to go to a jury. **See** Plaintiff's Brief in Opposition to Shawnee's Motion for Summary Judgment, 10/19/24, at 3.

On December 11, 2024, the trial court entered an order granting Shawnee's motion for summary judgment, having decided the motion "on

---

[5] Shawnee did not submit any competing liability expert reports to support its motion for summary judgment.

[6] Attached to its motion for summary judgment, Shawnee included Lin's Response to Defendant's Interrogatories that indicated Penniman would be called as an "expert on ski resort standards and safety" at trial. **See** Summary Judgment Motion, 9/13/24, "Exhibit C," at 76.

briefs only pursuant to Pa.R.C.P. 211." Order, 12/11/24.[7] Specifically, the court concluded that Lin's ordinary negligence claims were barred both under the Act as inherent risks of skiing and by the valid exculpatory release she signed for any injuries she sustained as a result of Shawnee's negligence. **See** Trial Court Opinion, 1/10/25, at 8, 10. The court further found that Lin did not adduce sufficient evidence to prove Shawnee acted grossly negligently or recklessly and, thus, was unable to support a claim for damages on that basis. **Id.** at 12. Lin filed a timely notice of appeal. Both Lin and the trial court have complied with Pa.R.A.P. 1925. Lin raises the following issues for our review:

> (1) Whether the [t]rial [c]ourt, viewing the facts and all reasonable inferences to be drawn therefrom in the light most favorable to the non-moving party (here, [Lin]), abused its discretion or committed an error of law when granting [Shawnee]'s [m]otion for [s]ummary [j]udgment and dismissing this matter in full?
>
> (2) Where, as here, the [t]rial [c]ourt granted summary judgment in favor of [Shawnee] (the owners and operators of a ski resort), and against [Lin,] thereby putting [Lin] out of court, and one of the [t]rial [c]ourt's stated bases for the grant of summary judgment is that [Lin]'s claims are barred by a release or exculpatory clause in an agreement to which [Lin] is a party despite the fact that any such release or exculpatory clause is inconsequential in the face of claims by [Lin] that [Shawnee] acted in a grossly negligent or reckless manner, and [Lin] produced an expert report detailing the grossly negligent and reckless conduct of [Shawnee], which expert report the [t]rial [c]ourt chose to assail or ignore, whether the [t]rial [c]ourt committed an abuse of discretion or error of law in granting summary judgment against [Lin], the non-moving party, in whose favor the [t]rial [c]ourt was required to be factually biased, such that that [the] Superior Court of Pennsylvania should reverse the [t]rial [c]ourt's decision

---

[7] The trial court denied Lin's request for oral argument on Shawnee's summary judgment motion. **See** Order, 11/21/24.

granting summary judgment against [Lin] and remand this case to the [t]rial [c]ourt for a trial before a jury?

(3) Where, as here, the [t]rial [c]ourt granted summary judgment in favor of [Shawnee] (the owners and operators of a ski resort), and against [Lin,] thereby putting [Lin] out of court, and one of the [t]rial [c]ourt's stated bases for the grant of summary judgment relies upon the application of [the Act], finding that [Lin]'s injuries were caused by a risk inherent to the activity of skiing, despite the fact that [Lin] produced an expert report detailing that [Lin]'s injuries were not caused by a risk inherent to skiing, but instead as a result of the negligent, grossly negligent, or reckless design, construction, and placement of the ski trails together with the negligent, grossly negligent, or reckless design, construction, and placement of the ski lodge located on the property owned and operated by the ski resort, which expert report and opinions the [t]rial [c]ourt chose to assail or ignore, whether the [t]rial [c]ourt committed an abuse of discretion or error of law in granting summary judgment against [Lin], the non-moving party, in whose favor the [t]rial [c]ourt was required to be factually biased, such that the Superior Court of Pennsylvania should reverse the [t]rial [c]ourt's decision granting summary judgment against [Lin] and remand this case to the Trial Court for a trial before a jury?

Appellant's Brief, at 11-12 (renumbered by ease of disposition).

Pennsylvania Rule of Civil Procedure 1035.2 governs motions for summary judgment and provides as follows:

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or **expert report**, or

(2) if, after the completion of discovery relevant to the motion, **including the production of expert reports**, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2 (emphasis added). Moreover, our standard of review of an appeal from an order granting summary judgment is well-settled:

> A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary. In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule[, Rule] 1035.2. [] Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof . . . establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Bell*, *supra* at 268 (citation omitted).

In her first issue on appeal, Lin argues that "the record contains substantial evidence that [Shawnee's] conduct was grossly negligent and reckless"[8] and, thus, the release she signed on the date of her accident does

_____

[8] Lin's amended complaint alleges Shawnee's conduct amounted to recklessness and gross negligence based on the following:

> a.) Mislabeling the ski trail on which [Lin] was injured to create a false sense of security that the ski trail required a lower skill level, and resulting in [Lin] knowingly ending up on a trail with a higher skill level that caused her to gain more speed than she would have gained on a lower skill level trail;
>
> b.) Utilizing a ski trail design that forces novice/beginner skiers into an area with advanced level skiers and creates a hazard for skiers of all skill levels, but especially for novice/beginner skiers, without taking precautions to ameliorate the hazard created by said ski trail design;

*(Footnote Continued Next Page)*

not bar her claims.[9]  Appellant's Brief, at 58.  Specifically, Lin claims that her

expert report details Shawnee's gross negligence and recklessness where the

_____

> c.) Placing an unguarded/unprotected building structure at the immediate base of the mislabeled "beginner" trail which is actually an "intermediate" trial.
>
> d.) Failing to utilize catch/safety fencing to protect skiers from impacting the ski racks, building structure[,] and windows at the base of the subject ski trail;
>
> e.) Failing to utilize safety glass in the building structure at the immediate base of the subject ski trail or limit or eliminate the possibility of a person being injured or killed by broken glass caused by a collision with said glass, irrespective of the reason why the person impacted the glass; [and]
>
> f.) Failure to properly segregate advance[d] level skiers from beginner/novice skiers in the area where [Lin] was injured, creating a situation where novice/beginner skiers may be startled or otherwise distracted by advanced skiers when coming to the bottom of the ski trail[.]

Amended Complaint, 12/12/22, at 5-6.

[9] On appeal, Lin does not allege that the release she signed is ambiguous or otherwise technically deficient so as to render it unenforceable.  *Cf. Kibler*, *supra* at 983 (plaintiff-skier claimed on appeal release was ambiguous, "lacked conspicuity and was without print of a size and boldness that draws the attention of an ordinary person").  *See infra* at n.16.  Moreover, the trial court appropriately determined that the release did not contravene public policy, that it involved the private affairs of Lin, and that it was not a contract of adhesion.  *See* Trial Court Opinion, 1/10/25, at 9.  Particularly, the court concluded that Lin could have refused to sign the release and have elected not to ski at Shawnee on the day of the accident.  *Id.* at 9-10.  *See Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174 (Pa. 2010) (Supreme Court upheld release and affirmed order granting summary judgment that barred plaintiff skier's negligence claim, noting Pennsylvania courts encourage sport of skiing and our courts have previously upheld such releases for negligence); *accord: Tayar v. Camelback Ski Corp., Inc.*, 47 A.3d 1190 (Pa. 2012).

resort: (1) mislabeled the Greenhouse trail as a 'green circle' or beginner trail when its slope gradient exceeded industry standards for beginner trails; (2) designed and constructed the Hope Lodge directly at the terminus of the Greenhouse trail, without providing an adequate deceleration area; (3) failed to implement necessary safety measures despite having available alternative; (4) did not install impact mitigation devices to protect skiers from collisions with the ski racks and lodge; and (5) failed to use safety glass in the windows of the Hope Lodge, despite the foreseeable risk of collisions. *See* Appellant's Brief, at 59-61.

In the context of exculpatory releases used for downhill skiing, our Supreme Court has stated:

> [D]ownhill skiing . . . is a voluntary and hazardous activity, and that fact is acknowledged in the Act as discussed above. Moreover, an exculpatory agreement conditioning the use of a commercial facility for such activities has not been construed as a typical contract of adhesion. The signer is under no compulsion, economic or otherwise, to participate, much less to sign the exculpatory agreement, because it does not relate to essential services, but merely governs a voluntary recreational activity. The signer is a free agent who can simply walk away without signing the release and participating in the activity, and[,] thus[,] the contract signed under such circumstances is not unconscionable.

*Chepkevich*, 2 A.3d at 1191 (internal citations omitted).

Gross negligence and recklessness are distinguishable from regular negligence. Gross negligence "constitutes conduct more egregious than ordinary negligence[,] but does not rise to the level of intentional indifference to the consequences of one's acts." *Feleccia v. Lackawanna Coll.*, 215 A.3d

- 13 -

3, 19 (Pa. 2019) (citation omitted). "Recklessness is distinguishable from negligence on the basis that recklessness requires conscious action or inaction which creates a substantial risk of harm to others, whereas negligence suggests unconscious inadvertence." *Tayar*, 47 A.3d at 1200. Exculpatory releases of reckless behavior are unenforceable, "as such releases would jeopardize the health, safety, and welfare of the people by removing any incentive for parties to adhere to minimal standards of safe conduct." *Id.* at 1203 (citation omitted).

The trial court states that it considered the content of Lin's expert report, *see* Pa.R.C.P. 1035.2, but found that the report was immaterial because Shawnee's conduct amounted to nothing more than ordinary negligence. Specifically, the court stated:

> There is nothing within [Lin's] argument which shows [Shawnee] acted or failed to act in a conscious manner to create a substantial risk of harm to others. As has been stated repeatedly, skiing is an inherently dangerous activity. Falls and collisions are an expected part of the sport, especially for those who are novices. Contrary to [Lin's] contention, the previous accident reports are further evidence that skiing itself is dangerous. Were [Shawnee] required to mitigate every fall and collision at [its] facility, [it] would not be able to run a ski resort. We also do not find that the layout of Hope Lodge in respect to the Greenhouse Slope [evidenced] a conscious disregard for the safety of [Shawnee's] patrons, nor that the alleged mislabeling of Greenhouse Slope rises to the level of either gross negligence or recklessness. Therefore, we find that [Lin] has also failed to meet her burden in establishing gross negligence or recklessness and summary judgment is appropriate on [those] issue[s] as well.

Trial Court Opinion, at 1/10/25, at 11-12.

Instantly, the question before us is whether Lin presented evidence to create a factual dispute regarding Shawnee's alleged recklessness or gross negligence. *See Tayar*, *supra*.

> While it is generally true that the issue of whether a given set of facts satisfies the definition of gross negligence is a question of fact to be determined by a jury, a court may take the issue from a jury, and decide the issue as a matter of law, if the conduct in question falls short of gross negligence, the case is entirely free from doubt, and no reasonable jury could find gross negligence.

*Kibler*, *supra* at 985, citing *Downey v. Crozer-Chester Medical Center*, 817 A.2d 517, 525-526 (Pa. Super. 2003) (en banc) (quotation omitted).

In *Cipully v. Shawnee*, 2010 U.S Dist. LEXIS 154883 (M.D. Pa. 2010),[10] the United States District Court for the Middle District of Pennsylvania granted in part and denied in part defendant Shawnee's motion for summary judgment in a personal injury action, concluding that the plaintiff's claim of ordinary negligence was barred by the Act, but her claim for gross negligence was not barred based on a form she signed prior to snow tubing on defendant's mountain. In that case, plaintiff went to Shawnee to snow tube with family and friends. Prior to snow tubing, she signed a document titled, "Snow Tubing

---

[10] Although the case was filed in federal district court, because the court exercised diversity jurisdiction, it applied the substantive law of Pennsylvania. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415 (1996). Moreover, "if the Third Circuit has not ruled on a specific question, this Court may seek guidance from the pronouncements of the other federal circuits, as well as the district courts, in the same spirit in which the Third Circuit itself considers such decisions." *Werner v. Plater-Zyberk*, 799 A.2d 776, 782 (Pa. Super. 2002).

Acknowledgment of Risk and Agreement Not to Sue" (Form). The Form

contained language acknowledging the risk of the sport and stating that:

> [Plaintiff] will not sue and will release [Shawnee or its employees] from any and all liability if [plaintiff] . . . is **injured while using any snow tubing facilities** or while being present at the facilities, **even if [plaintiff] contend[s] that such injuries are the result of negligence or any other improper conduct on the part of the snow tubing facility**.

*Id.* at *2 (emphasis added). After four or five runs, plaintiff was injured when

she was thrown from her snow tube while encountering deceleration mats at

the bottom of the run. *Id.* Citing "settled Pennsylvania state law," the Court

noted that "an indemnification agreement that holds a party harmless for

negligence, when strictly construed, does not indemnify against acts of gross

negligence." *Id.* at *6.

Similarly, here, the release Lin signed contains language identical to that

in *Cipully*. *See supra* at 2. Moreover, as in that case, here, Shawnee's

release does not indemnify it against any acts of gross negligence or

recklessness, but it does bar Lin's claims for ordinary negligence. *See infra*

at n.16. Instantly, the trial court found that Shawnee's actions amounted to

ordinary negligence, which has been defined as "mere inadvertence,

incompetence, unskillfulness, or a failure to take precautions to enable [a

skier] adequately to cope with a possible or probable future emergency."

*Kibler, supra* at 985 (citation omitted). Recklessness, on the other hand,

requires some kind of conscious action or inaction, making it more akin to

intentional conduct. *Id.* at 986.

In ***Bourgeois v. Snow Time, Inc.***, 242 A.3d 637 (Pa. 2020), the plaintiff and his parents brought a personal injury action against the defendant ski resort after he suffered severe injuries rendering him a quadriplegic as a result of a snow tubing accident. Plaintiff's snow tube collided with a folded anti-slip and anti-fatigue kitchen mat that the resort's employees had placed at the bottom of the hill to help snow tubers decelerate and prevent them from traveling beyond the run area. ***Id.*** at 639. The resort began using the deceleration mats after it increased the height of the tubing hill. ***Id.*** at 387.

Before he took his first run on the snow tube trail, plaintiff's parents purchased him a season pass containing a release[11] agreement that warned snow tubing involves "inherent and other risks that could lead to serious injury

_____

[11] The Release stated, in pertinent part, that plaintiff releases from negligence claims the resort and its owners:

> In consideration of being allowed to use the tubing area at Liberty, Whitetail or Roundtop, I HEREBY AGREE NOT TO SUE AND TO RELEASE, SKI LIBERTY OPERATING CORP., WHITETAIL MOUNTAIN OPERATING CORP. AND SKI ROUNDTOP OPERATING CORP., AS WELL AS THEIR OWNERS, AGENTS AND EMPLOYEES FROM ANY AND ALL LIABILITY RELATED TO INJURY, PROPERTY LOSS OR OTHERWISE RELATED TO MY USE OF THE TUBING FACILITY, REGARDLESS OF ANY NEGLIGENCE ON THE PART OF THE SAME. I FURTHER AGREE TO INDEMNIFY AND DEFEND THE SAME, FROM ANY CLAIM FOR LIABILITY  RELATED TO INJURY AS A RESULT OF MY OR MY CHILD'S USE OF THE FACILITIES, REGARDLESS OF ANY NEGLIGENCE, RECKLESSNESS OR IMPROPER CONDUCT.

***Id.***, 195 A.3d at *14.

or death." *Id.* at 641.[12] The ski resort filed a motion for summary judgment arguing that the release agreement barred all plaintiff's claims and that there was no evidence that the resort acted recklessly by using deceleration mats at the bottom of the tubing hill to avoid collisions among the tubers plaintiff's injuries were simply the result of an "unfortunate accident." *Id.* at 642. In response to the resort's motion, plaintiff argued that there was clearly a question of fact for a jury regarding whether the resort's "deliberate decision to use kitchen floor mats as a safety device to bring tube riders to a stop after they had increased the height of the hill to make the ride too fast for the amount of runout space rose to the level of gross negligence or reckless conduct." *Id.* 643. Plaintiff also argued that the resort's conduct was a reckless, intentional decision where it had acknowledged that placing an obstacle like a deceleration mat in the path of a snow tube was a risk, especially where the tube's warning label stated such. *Id.* *See also supra*

_____

[12] Each of the snow tubes used at the resort also had a warning label affixed to it that stated:

WARNING!!!

SERIOUS INJURY OR DEATH MAY RESULT FROM TUBING

• Do Not Use Under The Influence Of Alcohol Or Drugs.

• Product Is Designed To Be Used On Hills With No Obstacles With Adequate Room To Stop.

• Product Has No Steering And No Brakes.

• Product Has the Ability To Development [sic] High Speeds On Steep Hills Under Certain Snow Condition [sic].

*Id.*

at n.12 (warning affixed to snow tube stating "product is designed to be used on hills with no obstacles with adequate room to stop") (unnecessary capitalization omitted).

Attached to his response to the summary judgment motion, plaintiff included two liability expert reports. One of the reports discussed the expert's years of experience in conducting accident investigations and risk management in the ski insurance industry and his familiarity with the National Ski Areas Association tubing operations resource guide and generally accepted practices for snow tubing design and deceleration aids. *Id.* In his opinion, the expert concluded that the resort's "decision to use deliberately deployed folded anti-fatigue rubber mats as [] deceleration devises [sic] constitutes an extreme departure from the ordinary standards of conduct for a tubing park operator in th[is] Commonwealth and the generally accepted practices and principles employed by the ski industry for tubing park operations." *Id.*

Plaintiff's second liability expert performed a biomechanical incident analysis and concluded that the plaintiff's accident was caused by his collision with the folded mat. In reaching his conclusion, the expert employed scientific principles regarding speed, the coefficient of friction with snow on a hill, the influence of water film on the surface of the hill, and the change of the snow's temperature. *Id.* at 388. The expert opined that the resort "knew or should have known that tubers traveling at a high rate of speed would find their tube brought to an abrupt stop when it encountered a folded mat, with that risk increasing further when the mat was folded with the nubs exposed to the

bottom of the tube." *Id.* at 389. The resort did not submit any competing expert reports in support of its summary judgment motion.

The trial court granted the resort's summary judgment motion, concluding that the exculpatory provision in the release agreement on the snow tubing season pass barred the plaintiff's negligence claims. *Id.* at 645. The court also concluded that the plaintiff did not produce sufficient evidence to show that the resort's conduct was reckless because the resort "intended for the deceleration mats to prevent snow tubers from traveling beyond the run-out area and colliding with other objects or snow tubing patrons." *Id.* 646. The trial court further justified its decision based upon the fact that the plaintiff did not produce an industry standard for the placement or use of deceleration mats and, thus, without such a standard, the resort did not know that using the mats would pose an unreasonable risk of harm as compared to placing the mats on the trail in a different way, using different mats altogether, or using another mode to slow down tubers. *Id.* Finally, the court found that summary judgment was warranted on the recklessness claim where plaintiff did not show that the resort "had actual knowledge from a prior accident or an employee's observation that folding the mats increased the risk of harm to its snow tubing patrons." *Id.* Similarly, the court found that the record did not contain sufficient facts to show that the resort deviated from the standard of care and, thus, a jury could not reasonably conclude the resort was grossly negligent. *Id.*

On direct appeal, our Court affirmed the trial court's order granting summary judgment concluding that: the release applied to bar plaintiff's claims of general negligence; plaintiff failed to make out a case of *prima facie* case of recklessness or gross negligence; and plaintiff's expert failed to articulate the appropriate standard of care for the use of deceleration mats and, as a result, could not establish, as a matter of law, the resort's duty to plaintiff and that the resort should have known about the standard of care. *See Bourgeois v. Snow Time, Inc.*, 195 A.3d 993 (Pa. Super. 2018) (Table).

The Supreme Court granted plaintiff's petition for allowance of appeal, limited to the issue of whether our Court erred in affirming the trial court's order granting summary judgment where the trial court disregarded the plaintiff's expert reports by not viewing them in a light most favorable to plaintiff, improperly requiring the experts to establish the legal duty breach by the defendant, dismissing the expert's opinions as conclusory, and, overlooking numerous opinions throughout the reports that supported plaintiff's *prima facie* case. *See id.*, 242 A.3d at 649.[13] Ultimately, the Supreme Court reversed the Superior Court, concluding that: the trial court failed to view the expert report in the light most favorable to plaintiff where the resort did not have a duty to comply with industry standards, but, rather,

_____

[13] The plaintiff in **Bourgeois** did not appeal the trial court's decision to grant summary judgment on his ordinary negligence claim and, thus, the issue was "outside of the scope of the issues [the Supreme Court] granted allowance of appeal to consider." *Id.* at 645 n.3.

to "exercise reasonable care to protect its patrons against unreasonable risks that its conduct of using rubber mats to decelerate snow tubers created;" *id.* at 658; plaintiff's expert "contain[ed] numerous other conclusions as to how [the resort] breached its duty of care in a grossly negligent or reckless manner in that it knew or should have known that its intentional acts increased the risk of substantial harm to its patrons;" *id.*; and plaintiff's expert raised a genuine issue of material fact as to the resort's constructive knowledge, particularly that it should have conducted studies of the stopping power of folded mats and the increased risk of harm created by their use. *Id.*

On appeal, Lin presents an argument nearly identical to that of the plaintiff in *Bourgeois*, contending that the trial court failed to view the evidence in the light most favorable to her as the non-moving party. Claiming that her evidence creates genuine issues of fact as to whether Shawnee's conduct was grossly negligent or reckless, Lin points out that her expert report raised issues about Shawnee's failure to use impact mitigation devices, its lack of implementation of safety measures, its failure to provide an adequate deceleration area at the base of the trails immediately in front of the lodge, and its knowledge that prior patrons had collided with the lodge and ski racks and yet did nothing to mitigate that risk. *See* Appellant's Brief, at 59-62.

"It has long been Pennsylvania law that, while conclusions recorded by experts may be disputed, the credibility and weight attributed to those conclusions are not proper consideration at summary judgment; rather, such determinations reside in the sole province of the trier of fact, here, a jury."

**Summers v. Certainteed Corp.**, 997 A.2d 1152, 1116 (Pa. 2010) (citations omitted).  Moreover, at the summary judgment stage, a trial court is required to take all the expert testimony and reports submitted by the non-moving party, and all reasonable inferences therefrom, in a light most favorable to the non-moving party, "**so long as the conclusions contained within those reports are sufficiently supported**." **Id.** (emphasis added).  A court cannot, at the summary judgment stage, "*sua sponte* assail th[e testimony and reports] in an order and opinion granting summary judgment." **Id.** Finally, "the trial judge must defer to those [expert] conclusions, [] and should those conclusions be disputed, resolution of that dispute must be left to the trier of fact." **Id.** (citations omitted).

After an exhaustive review of the record on appeal, we find that Lin's expert's conclusions regarding her claims of gross negligence and recklessness are sufficiently supported to survive summary judgment when viewed in the light most favorable to Lin as the non-moving party.  **See id.**  Here, like in **Bourgeois**, the trial court committed an error of law in failing to view the expert's conclusions in a light most favorable to Lin.  Specifically, the court gave short shrift to Penniman's report and expert opinion,[14] which included references to industry safety standards, "safety hierarchies," and the

---

[14] To the extent Shawnee challenges Penniman's credibility or the weight to be accorded his testimony, those are questions for the trier of fact. **See Summers**, **supra**.  Moreover, any issue with regard to Penniman's qualifications, **see** Appellee's Brief, at 43, is best addressed through a motion *in limine* to limit or exclude his testimony, a threshold question a court must resolve before determining whether his opinions are admissible.

unappreciated visible risks to novice skiers of man-made hazards placed at a day lodge located at the base of a trail. *See* Penniman Expert Report, 7/22/24, at 10-11. Notably, Penniman presented evidence of another local ski resort whose lodge is also situated at the bottom of the trails, but is placed an appreciable distance from the end of the trails and included a safety measure and a large deceleration area. *See id.* at 6. Moreover, while Lin testified that two other resorts where she had skied in the past "had lodges [] at the base of the mountain" and "free[-]standing ski racks near the lodge," there was no evidence that those lodges and ski racks abutted the trails at the terminus of the runs. *See* N.T. Lin Deposition, 6/16/23, at 177-80.

Additionally, Lin presented evidence showing that in the five years prior to her accident, six other Shawnee patrons had crashed into the lodge or the ski racks at the base of the trails. *See* Penniman Expert Report, 7/22/24, at 19. Under such facts, we conclude Lin's expert report creates a genuine issue of material fact regarding whether Shawnee was grossly negligent and/or reckless based on its constructive knowledge of prior, similar accidents and whether it knew or should have known that its failure to act increased the risk of substantial harm to its patrons.

Thus, we affirm the trial court's order granting summary judgment on Lin's claims of ordinary negligence, and reverse the trial court's order granting summary judgment based on Lin's claims of gross negligence and recklessness. While "a court may decide the question [of whether a party's conduct was grossly negligent] as a matter of law where the case is entirely

free from doubt and there is no possibility that a reasonable jury could find gross negligence," ***Colloi v. Phila. Elec. Co.***, 481 A.2d 616, 621 (Pa. Super. 1984), this case is not entirely free from doubt.[15]

Order affirmed in part and reversed in part. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/23/2025

---

[15] We need not address Lin's remaining claim—that the trial court improperly concluded her negligence claim was barred under the Pennsylvania Skiers Responsibility Act because her injuries were not caused by "inherent risks" of skiing—since Lin's ordinary negligence claims were barred by the release she signed.

A typical exculpatory clause is valid when it meets the following three requirements:

> (a) it does not contravene any policy of the law, that is, if it is not a matter of interest to the public or state []; (b) the contract is between persons relating entirely to their own private affairs[]; (c) each party is a free bargaining agent and the clause is not in effect a mere contract of adhesion whereby [one party] simply adheres to a document which he is powerless to alter, having no alternative other than to reject the transaction entirely.

***Princeton Sportswear Corp. v. H & M Associates***, 507 A.2d 339, 341 (Pa. 1986) (internal quotation marks omitted).